# Exhibit 4

**Department of Workforce Development**
**Equal Rights Division**
Street Address
201 E. Washington Ave., Rm. A100
Madison, WI 53703
Telephone: (608) 266-6860
Fax: (608) 267-4592

Mailing Address
PO Box 8928
Madison, WI 53708



**STATE OF WISCONSIN**
**DWD**
Department of Workforce Development

**Tony Evers,** Governor
**Amy Pechacek,** Secretary-designee

DATED AND MAILED **JAN 27 2021**

Daryl R. Strohschein

Complainant

INITIAL DETERMINATION -
NO PROBABLE CAUSE

vs.

ERD Case No. CR202001075
EEOC Case No. 26G202000791C

Saputo Cheese USA, Incorporated
1052 6th St
Almena, WI 54805
　　Respondent

---

I. THE DIVISION DECIDED:

There is no probable cause to believe Saputo Cheese USA, Incorporated, violated the Wisconsin Fair Employment Law, sec. 111.31--111.395, Stats., by:

A. Discriminating against the Complainant in terms or conditions of employment because of age;

B. Discriminating against the Complainant in terms or conditions of employment because of sex;

C. Terminating the employment of the Complainant because of age;

D. Terminating the employment of the Complainant because of sex.

The complaint is therefore dismissed.

II. THIS MEANS:

The Equal Rights Division found no reason to hold a formal hearing on the complaint and is dismissing the complaint.

III. THE NEXT STEP IS:

**The dismissal will become final unless the Complainant submits a written appeal letter to the Equal Rights Division, P.O. Box 8928, 201 East Washington Avenue, Room A100, Madison, Wisconsin 53708-8928. The appeal letter must be <u>received</u> within 30 days of the date this determination was mailed.** (The DATE OF MAILING is stamped at the top of the Initial Determination.) In the appeal letter, the Complainant must state the specific reasons for appealing. Appeals cannot be submitted by email.

If the Complainant files a timely appeal, this case will be certified for a formal administrative hearing. After the hearing, an Administrative Law Judge will decide if there is probable cause to believe that a violation occurred. A notice of hearing stating the date, time and place of hearing will be sent to the parties. This notice will also include an information sheet, as well as a copy of the statutes and administrative code. At the hearing, the parties will be given the opportunity to present evidence to support their cases. Neither the Initial Determination, nor the evidence presented to the Equal Rights Division during the investigation of this case, will automatically become part of the record at hearing. <u>The Administrative Law Judge will only consider evidence presented at the hearing.</u> The parties may wish to consult with an attorney for legal advice. The Division will close this case without further action if no timely appeal is received.

IV. <u>DATE OF FILING AND/OR INITIAL WRITTEN CONTACT</u>:

    A. The Complainant first contacted the Division in writing on May 5, 2020, alleging employment discrimination. The Division accepted the Complainant's complaint.

V. <u>THE DIVISION DECIDED THERE WAS NO PROBABLE CAUSE BASED ON THE FOLLOWING INFORMATION</u>:

    A. The Respondent, Saputo Cheese USA, Incorporated, is a producer, marketer, and distributor of dairy products which operates a production facility in Almena, Wisconsin. The Respondent is subject to the Wisconsin Fair Employment Law (WFEL) and employs more than twenty individuals.

    B. The Complainant, Daryl R. Strohschein, was employed by the Respondent in Almena from 1984 to March 2020. The Complainant identifies his birth date as ▇ 1965, and his sex as male. During the period relevant to this complaint, he was a Blue Cheese Production Supervisor on a PM shift.

    C. The Complainant claims that the Respondent discriminated against him in terms or conditions of employment and discharge because of age and sex.

    D. The Respondent indicates that, because blue cheese production was automated and heavily computerized, the Complainant's role required him to follow proper procedures for troubleshooting equipment. If the register in the computer system does not match what is detected on the floor by sensors, the equipment will stop. The Respondent claims the Complainant demonstrated a consistent failure to meet performance expectations and follow standard operating procedures, particularly during the last few months of his employment, which the Complainant disputes.

    E. The Respondent has a Product/Process Incident Report (PIR) Policy which requires documentation and investigation of situations involving a known or potential threat to safety or quality of product. The production supervisor on duty at the time of the

event is to complete the PIR form and issue/distribute it before the end of their shift. On October 1, 2019, Quality Assurance Manager Angela Hines emailed the Complainant and other employees, indicating that they completed training on the new PIR form. Hines also separately emailed the Complainant that day about having asked for follow up on a specific PIR for a week without response.

F. On November 20, 2019, Plant Manager David Miller and Jerrold Featherly, the Complainant's direct supervisor, had a meeting with him about performance issues, with a resulting Record of Discussion. The Respondent contends the Complainant failed to follow the investigation and reporting procedure on four occasions in November 2019, which it describes as follows. On November 11, 2019, an operator reported a missing bushing on equipment. The Complainant did not investigate or file a PIR, and management therefore did not learn of the issue until November 18, 2019. The Complainant improperly reported a product loss on November 12, 2019. On November 16, 2019, the Complainant failed to file a PIR for a non-conforming temperature reading despite direction, claiming he need to wait for supervisor Sue Bever to arrive to file it and never filing it, with Bever filing it instead. Bever is older than the Complainant. On November 16, 2019, the Complainant made manual adjustments which caused equipment to fail to maintain spacing for salt bring solution and salt concentration levels, causing a stoppage, quality issues, and lost product, and instead of investigating and filing a PIR, attempted to fix issues himself.

G. The Complainant claims he brought up the missing bushing to Jake Jennings from maintenance, who should have reported not fixing it. The Complainant claims the temperature situation began with a repair before his shift and that Director of Operations Mike Rothwell approved him having Bever write the report, as she would have the relevant information. The Respondent contends the issue arose on the Complainant's shift. The Complainant claims he dealt with the loss the standard way and missed the relevant new training. Hines questioned why the Complainant had not contacted someone to understand what needed to occur if the training didn't occur. The Complainant claims the flow of cheese was off, creating the spacing issue, and that he brought this up previously without it being addressed. The Complainant claims malfunctioning machinery and insufficient workers to manually add salt caused the salinity issue, as well as someone taking a wrong reading. After the meeting, Featherly told the Complainant he did not feel good about the discussion at all. The Complainant claims this shows Featherly not agreeing with it.

H. On February 11, 2020, the Complainant informed Featherly that he had to tell maintenance what to do the previous night because they stood around for an hour. Featherly told the Complainant he should remind maintenance to call Maintenance Manager Doug Bauer in thirty minutes if they couldn't figure it out.

I. On March 6, 2020, at approximately 7:15 pm, the coagulator on the blue cheese line started to malfunction. The Respondent contends the Complainant failed to follow established protocol, which was to call maintenance within ten minutes of observing an issue and notify his manager and call in Cybertrol technicians within thirty minutes if the responding Maintenance Technician could not remedy the issue. The Respondent informed supervisors of the procedure verbally repeatedly, with the timeline posted on a whiteboard in the supervisor office. The Complainant denies seeing this during employment and contends the Maintenance Technicians were

responsible for escalation, per the February 11, 2020, email. The Complainant did not contact Featherly until after more than fifty minutes passed.

J. The Respondent contends the Complainant repeatedly tried to troubleshoot the coagulator himself in violation of policy, with the Complainant making manual adjustments. The Respondent had established a policy that supervisors and line workers were not to change the register or make manual adjustments to machines by themselves, with this communicated repeatedly. The Complainant admits Featherly told supervisors not to change the register but claims that Featherly looked directly at him and said, "Daryl knows how to fix the register," which the Complainant took to imply he was still allowed to do so. The Complainant claims that, on two occasions thereafter, Featherly had the Complainant change the register, and the Complainant also changed the register thereafter without issues.

K. The Respondent contends that the Complainant manually retracted a plate and made other manual adjustments on March 6, 2020, causing the machine to stop. The Complainant claims Joe Lehman, born in 1971, from maintenance made the decision to move a plate over and down, with the Complainant telling him this was incorrect. Featherly noted the Complainant as saying maintenance suggested swinging the plate and lowering, which caused a lockup. The Complainant indicates he could not complete the PIR because the issue was not resolved before the end of his shift. The Complainant admits he and operator Tom Lefstad (born in 1957) moved the plate up and down before maintenance arrived, as this had worked in the past.

L. On March 7, 2020, the Complainant signed a statement stating the following about March 6, 2020. He arrived just before Lehman did after Lefstad called, with Dan Capuzzi arriving shortly after. Nothing they attempted was working. The Complainant told Capuzzi that he didn't know what to suggest and that, if they swung the plate over, it would mess up the register, and he wouldn't know how to fix it. The Complainant yelled the same to Lehman but a few minutes later asked Lehman if he wanted to do that. Lehman said yes. They did that and then tried to put it back but could not. Capuzzi called Cybertrol. The Complainant called Featherly.

M. The Respondent provided a statement it attributes to Lehman and Capuzzi about March 6, 2020, which stated the operator and the Complainant were moving the plate out and back in and that the Complainant was pushing buttons on the control screen. The Complainant denies this. The statement states the Complainant talked about deleting the plate out of the registry and that it would not be a good idea, but they continued to delete the plate out of the registry. The Complainant contends Lehman provided a different statement to Bauer on March 6, 2020, admitting full responsibility for moving the plate. Lehman sent an email to Bauer on March 8, 2020, in which he indicated he moved the plate and that this was wrong. Bauer did not forward the email to any of the decision-makers terminating the Complainant's employment until this complaint process. The Respondent claims Lehman's actions would have been appropriate if the Complainant had not made manual changes. The Complainant claims Featherly said Bauer was pissed about the plate being moved out on March 6, 2020, showing awareness of maintenance responsibility

N. On March 7, 2020, there were issues with the filler and turner area, and, on March 8, 2020, with a ratchet locking up. The Respondent indicates that the Complainant manually adjusted the equipment again and changed the registry on March 7, 2020,

which did not fix the issues and caused the machine to process cheese in an improper sequence. The Complainant claims the equipment appeared to be working fine when he left on March 7, 2020, and that the process was three to four hours behind when arriving on March 8, 2020. Featherly's notes mention issues those days being caused by stacks being manually moved in the register. The Respondent contends that the Complainant caused almost $140,000 in losses, including $1,656 in equipment damage, $53,800 in product render unfit for consumption, and $83,600 in lost production due to downtime, with the Complainant also failing to report, investigate, and file a required PIR. The Complainant claims no PIR needed to be completed on March 8, 2020, because there was no product involved.

O. Featherly and Human Resources Manager Julia Schurman investigated, interviewing the Complainant, the maintenance technicians from March 6, 2020, an employee who witnessed equipment issues on March 7, 2020, and Bever, who witnessed the equipment issues on March 8, 2020. The Respondent contends the Complainant claimed he did not report pursuant to company timelines because he did not think it was a big deal and knew what to do, admitted Featherly directed him and others not to change the register but believed this did not apply to him, and admitted not having a good answer for failing to file a PIR. The Complainant claims Schurman told him he let the plate situation happen and that he responded that he was instructed to follow maintenance's lead and did not believe he could override them. The Complainant claims he reminded Featherly that he had changed the registry in the past. Featherly informed the Complainant he was on administrative leave.

P. On March 16, 2020, Schurman and Featherly called the Complainant and informed him the Respondent was terminating his employment. Schurman, Featherly, Miller, and Human Resources Generalist Jennifer Ellefson make the decision. None of them was aware of any supervisor involved in a comparable loss situation; the Respondent denies that any other supervisor at Almena has caused a comparable loss in the past two years based upon a diligent search of records. Miller was born in 1973; the other three were born in 1978. Featherly and Miller are male; Ellefson and Schurman are female. The Complainant indicates Miller and Schurman began their positions within six to eight months earlier. The Complainant claims progressive discipline rather than discharge should have occurred and that the Respondent should have taken action against other employees involved. The Respondent contends the decision-makers determined the other employees acted appropriately based upon the information available to them based upon the investigation results.

Q. The Complainant claims Bever, who is female, continued to change the register after the direction not to. The Respondent denies that supervisors were aware of this and denies that Bever was involved in a series of misconduct over three days like the Complainant. Bever indicated when interviewed that she came into the issues on March 8, 2020, and that there were not register changes by day shift personnel. The Complainant believes that Featherly would have been aware of Bever doing this.

R. The Complainant claims a former manager informed him that the Respondent had a list of older Almena employees to terminate, which the Respondent denies.

S. As of July 22, 2020, the Respondent employed seventeen individuals in similar supervisor positions at Almena. Fourteen were male. Three were younger than the Complainant but within five years of his age; all were male. Four were older than the

    Complainant; three of the four were male. Four of the five supervisors supervised by Featherly were male; two were older than the Complainant, including one male. The Respondent replaced the Complainant with a 36-year-old male.

  T. The Complainant indicates that the Respondent also discharged another older male employee in late December 2019 and that this, along with the prior discharge of another older male, Gordon Garske, in October 2018, establishes a pattern. The Respondent discharged eight supervisors other than the Complainant in the two years before July 22, 2020. Six were male. One was older than the Complainant. One was younger but within five years of age of the Complainant. Featherly did not supervise any. Three of the eight appear to have been discharged during the period the Complainant indicates Miller and Schurman would have been in charge. All were male. Two of the three were ten years or more younger than the Complainant.

  U. The Complainant named a number of potential witnesses. The Division contacted the individuals for whom the Division had contact information. To the extent that the Division received information, it was largely irrelevant to the issues.

VI. INVESTIGATOR'S EXPLANATION:

  A. There is no probable cause to believe the Respondent violated the WFEL with regard to the Complainant. Schurman, Featherly, Miller, and Ellefson seem to have had a reasonable basis for deeming the Complainant the individual most responsible for the situations between March 6 and 8, 2020, based upon the information available following the investigation, particularly given his supervisor status. They did not have Lehman's statement admitting responsibility for the plate movement at the time, and even if they had, they appear to have had reason to tie the Complainant's admitted manual changes to the issues on March 7 and 8, 2020. The WFEL does not require any particular investigation process, nor that the conclusions drawn by the employer be correct; it only requires that the employer not take action based upon a protected characteristic.

  B. To the extent that the Complainant claims the Respondent ignored his manual changes in the past, those situations did not involve a large financial loss, which would be a situation in which an employer would care more about the ignorance of the rules. The Complainant does not indicate any other situations involving a comparable loss in which another younger or female supervisor was involved where the Respondent did not blame the supervisor, and the Respondent denies any other such loss situation occurred. The Respondent continues to employ a majority of male supervisors and a significant number of supervisors in the Complainant's age range and replaced the Complainant with a male employee.

  C. Likewise, given the various situations involving the Complainant occurring in November 2019, it appears Miller and Featherly had reason to believe the issues were with the Complainant. The Complainant does not identify any younger or female supervisor as having that many issues connected with them in so short a period without action. The Complainant's contention Featherly stated that he did not feel good about the discussion in November at all does not suggest that he did not agree with the performance discussion; it appears to suggest that he did not believe the Complainant took the discussion seriously.

Eric Fergison
Equal Rights Officer

cc:    Complainant
       Respondent
       Beth A. Huber, attorney for the Complainant
       David S. Birnbaum and Bayley F. Johnson, attorneys for the Respondent