**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

PETER MARKGREN and DARYL
STROHSCHEIN,

               Plaintiffs,

    v.

SAPUTO CHEESE USA INC.,

               Defendant.

Civ. File No.: 3:21-cv-00429-slc

---

### DEFENDANT SAPUTO CHEESE USA'S MOTION TO COMPEL DISCOVERY RESPONSES AND MEMORANDUM IN SUPPORT

---

Defendant Saputo Cheese USA Inc. respectfully requests that the Court compel Plaintiffs Peter Markgren and Daryl Strohschein to respond in full to Saputo's discovery requests. *See* Fed. R. Civ. P. 37(a). Saputo has worked diligently to obtain unquestionably relevant discovery, but has been met with delay tactics, confusing answers about whether responsive documents exist or have been produced, and repeated promises to get back to Saputo … later. Saputo cannot wait anymore. Not only is its motion for summary judgment due September 23, 2022, but Plaintiffs' counsel has said she is unable to litigate her case for a five-week period immediately before Saputo's motion is due and threatened Saputo with sanctions if it attempts to litigate its case during those weeks. Saputo respectfully requests that the Court order Plaintiffs to immediately provide fulsome responses to Saputo's discovery requests. Saputo also requests that the Court order

Plaintiffs' to pay Saputo's reasonable attorneys' fees in connection with brining this motion.

## FACTUAL BACKGROUND

This case arises from disputes between Plaintiffs Peter Markgren and Daryl Strohschein and Defendant Saputo Cheese USA regarding the separate terminations of their employment from Defendant. Because the facts and circumstances of Plaintiffs' employment terminations are unrelated to each other, Saputo moved to sever Plaintiffs' cases. (Dkt. 13.) Saputo also moved to dismiss most of Plaintiffs' claims given their failure to plead facts sufficient to state a plausible claim for relief. (Dkt. 10.) Both motions remain pending.

Saputo sells high-quality cheese and dairy products and, as relevant here, produces and distributes blue cheese at a facility located in Almena, Wisconsin. Markgren worked as a rotary press operator in Almena until Saputo terminated his employment on December 31, 2019, for violating Saputo's lock-out/tag-out safety policies on December 23, 2019, and for engaging in an altercation with two co-workers on December 28, 2019. Strohschein worked as a blue cheese production supervisor until Saputo terminated his employment on March 16, 2020, after he failed to follow company policies and rules in connection with production equipment malfunctioning, which resulted in major financial losses for the company.

Markgren has brought claims for age discrimination, harassment based on age, reverse gender discrimination, failure to accommodate a disability, disability discrimination, and retaliation in violation of the Family and Medical Leave Act, the

Americans with Disabilities Act, and the Age Discrimination in Employment Act. (Dkt. 1.) He claims damages of approximately $1.3 to $1.5 million from Saputo, made up of lost wages and benefits, emotional distress damages, and damages related to deteriorating health he asserts is a result of his termination. (Ex. A.[1]) Strohschein has brought claims for age discrimination and reverse gender discrimination.[2] He claims damages of approximately $1.3 million to $1.5 million, made up of lost wages and benefits and "severe" emotional distress damages. (Ex. B.)

## I.    Plaintiffs' Initial Disclosures

Given the pending motions, the Court stayed discovery until January 10.[3] (Dkt. 21.) Plaintiffs served their initial disclosure and related documents on January 10. (Exs. A, B.) Markgren named 41 people who purportedly have knowledge of his claims, plus unknown "physicians who treated [Markgren] when he went into the hospital." (Ex. A.) Strohschein named 31 people who purportedly have knowledge of his claims, plus a few categories of people such as "technicians" who understand particular Saputo production equipment, and "tech support individuals" external to Saputo. (Ex. B.) Contrary to the requirements of Fed. R. Civ. P. 26(a)(1)(A)(i), Plaintiffs did not say what knowledge these witnesses purportedly have about Plaintiffs' claims or defenses.

## II.   Plaintiffs' Responses to Saputo's Discovery Requests

---

[1] All exhibit citations reference exhibits attached to the Declaration of Emily Peterson, filed concurrently with this motion.

[2] Markgren and Strohschein also brought tort claims but they have agreed to dismiss them; a stipulation to that effect remains pending with the Court. (Dkt. 22.)

[3] Unless otherwise indicated, all dates are in 2022.

Saputo served discovery requests on Plaintiffs on March 2. (Peterson Decl., ¶ 2.) On March 29, Plaintiffs asked for a two-week extension to respond to Saputo's requests, which Saputo granted. (Ex. C.) Plaintiffs responded to Saputo's requests and served some responsive documents on April 15. (Exs. D–G.) A week later, Plaintiffs' counsel served a "Notice of Unavailability" on Saputo asserting that she would be "unavailable for any purpose whatsoever including but not limited to receiving notices of any kind, responding to *ex parte* applications and/or discovery requests, appearing in court, or attending depositions" for a *six-week period* from June 6 to July 18, and threatened that "[p]urposefully scheduling a conflicting proceeding without good cause is sanctionable conduct."[4] (Ex. H.)

Plaintiffs' responses to Saputo's discovery requests were deficient. On May 25, Saputo sent a letter to Plaintiffs' counsel addressing the deficiencies. (Ex. I.) The deficiencies at issue here are:

    **A.**     **Individuals with knowledge.** Because Markgren's and Strohschein's initial disclosures failed to identify the purported knowledge that their 41 and 31 respective witnesses have regarding their claims, Saputo requested that Plaintiffs identify "what knowledge that person has or claims to have." (Ex. D (M. Interrogatory No. 1), Ex. F (S. Interrogatory No. 1).) In response, Plaintiffs simply pointed to their deficient Initial Disclosures. (*See* Exs. D, F.)

    **B.**     **Third party communications.** Several of Saputo's discovery requests implicate communications that Plaintiffs or their counsel may have had with third parties regarding this litigation. (Ex. F (S. Interrogatory No. 2); Ex. G (S. RFP No. 4); Ex. D (M. Interrogatory No. 4); Ex. D (M. RFP No. 4).) Plaintiffs objected to providing such communications on the basis of a

---

[4] Saputo is not aware of any authority under which Plaintiffs can seek sanctions against Saputo or its counsel for litigating its case in such circumstances.

"right to privacy" and attorney-client privilege, even though neither applies here. (*See* Exs. D–G.)

C.   **Records regarding mitigation.** Saputo's requests seek information about Plaintiffs' efforts to mitigate their damages, including by seeking new employment. (Ex. F (S. Interrogatory No. 3); Ex. G (S. RFP Nos. 7–8, 10).) Although Strohschein identified two positions he has held since Saputo discharged him, (Ex. F at 6), he provided virtually no records for Saputo to evaluate his efforts to mitigate his damages, including but not limited to applications, communications with potential employers and/or references, records regarding jobs applied for but not received, etc. Strohschein also failed to produce any information regarding his job performance and/or his disciplinary history with his new employers.

D.   **Tax Returns.** Saputo requested that Plaintiffs produce their federal and state income tax returns for the years 2020 through the trial, which at this point would consist of Plaintiffs' 2020 and 2021 tax returns. (Ex. G (S. RFP 10); Ex. E (M. RFP 10).) Plaintiffs objected based on a "right to privacy."

E.   **Medical Records.** Plaintiffs also did not produce sufficient information regarding their medical records, which are relevant to Markgren's claims related to his alleged disability, and both parties' alleged emotional distress. While Plaintiffs produced some medical records, they objected that they have no obligation to provide the other records, asserting that they are not in their "custody and control." (Ex. G (S. RFP No. 11); Ex. E (M. RFP No. 11).) Markgren stated he was "redacting and Bates stamping what medical records he has within his possession, custody and control," (Ex. E (M. RFP No. 11)), but has yet to produce any additional records.

## III.   Saputo's Efforts to Meet and Confer

Saputo's May 25 deficiency letter asked Plaintiffs to supplement their responses by June 10. (Ex. I.) On June 7, rather than respond to Saputo's letter, Plaintiffs' counsel served on Saputo an "Amended Notice of Unavailability," stating that she would be available from June 6 through July 18 after all, but now would be unavailable for a five-week period from August 15 through September 19. She again threatened Saputo with

sanctions if it attempted to litigate its case during that period.[5] (Ex. J.) The following day, Plaintiffs' counsel informed Saputo that she could not respond to the deficiency letter by June 10, as requested. (Ex. K.)

On June 13, Saputo followed up indicating that time was of the essence, particularly as it related to Plaintiffs' medical records. Saputo tried to facilitate the production of responsive records proposing that, "If you do not plan to provide a fulsome production of Plaintiffs' medical records, please have your clients fill out the attached medical release forms" for each relevant medical provider "and return to us as soon as possible so we can send subpoenas to the relevant medical facilities." (Ex. L.) Saputo attached a medical release form for Plaintiffs' convenience; Plaintiffs did not substantively respond.

After multiple attempts to confer with Plaintiffs' counsel via telephone regarding outstanding discovery issues, counsel was finally able to speak on July 7. (Peterson Decl., ¶ 3.) Plaintiffs' counsel asserted she still needed to review Saputo's deficiency letter— sent more than six weeks prior—but would get back to Saputo shortly. (*Id.*) Plaintiffs' counsel also asserted that Plaintiffs had collected and produced all responsive medical records, despite the statements in their discovery that some records remained to be produced, and their objections that some records were not in their custody or control. (*Id.*) When reminded of those contradictory statements, Plaintiffs' counsel specifically promised to respond to Saputo quickly regarding whether Plaintiffs would be willing to

---

[5] Saputo's Motion for Summary Judgment is due September 23. (Dkt. 21.)

collect and provide Plaintiffs' outstanding medical records, or whether Saputo will need to subpoena the relevant medical providers. (*Id.*)

On July 18, after not hearing any updates, Saputo followed up by letter. (Ex. M.) Saputo highlighted its repeated efforts to resolve these outstanding discovery issues. (*Id.*) It also noted that Saputo would need to move this court to compel substantive responses to its discovery requests to meet the summary judgment deadline, particularly if Plaintiffs' counsel would be entirely unavailable for a five-week period before that deadline. (*Id.*) Plaintiffs' counsel responded on July 21, stating that she would produce a few more medical records for Markgren and that Plaintiffs "will not produce tax returns without supporting authority that they in fact, are required." (Ex. N.) Saputo responded the next day, providing such authority, and again reminding Plaintiffs of the remaining unresolved discovery issues. (*Id.*) Saputo has not received a response.

## ARGUMENT

### I.   Saputo Attempted to Confer in Good Faith with Plaintiffs to Obtain Discovery Without the Court's Assistance.

Before moving to compel discovery, the movant must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). As detailed above, Saputo made numerous efforts to obtain complete discovery responses prior to making this Motion, providing Plaintiffs' counsel multiple opportunities to provide responsive materials. (*See* Exs. I–N.) Other than the limited issue of the tax

returns, Plaintiffs have not actually objected to providing any of the information discussed above, they have simply delayed. Saputo cannot wait anymore.

## II.   Plaintiffs Should Be Required to Identify the Knowledge Their Witnesses Purport to Have.

Rule 26 and Rule 33 require that Plaintiffs identify, in detail, the knowledge possessed by the witnesses they name in their initial disclosures and responses to Saputo's interrogatories. *See, e.g.,* Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiffs have made no attempt to excuse their failure to comply with the applicable rules.

As this Court has recognized, compliance with these discovery requirements is critical to narrow and expedite discovery. *See Eurochem N. Am. Corp. v. Ganske*, Case No. 18-cv-16-slc, 2020 WL 747008, at *3 (W.D. Wis. Feb. 14, 2020). In *Eurochem*, the defendant disclosed a broad category of people with potential knowledge and vaguely stated that the witnesses would provide "testimony regarding the facts, circumstances and events alleged in Defendant's Counter-Claims and Third-Party Complaint." The Court held this was not sufficient and granted a motion to exclude nine specific witnesses identified only after the close of discovery when plaintiff amended its disclosures. The Court highlighted that the disclosures required by Rule 26(a)(1) "are designed to accelerate the exchange of basic information and help focus the discovery that is needed, and facilitate preparation for trial or settlement." *Id.* at *2 (internal quotation and citations omitted). The Court also emphasized that Rule 26(g) requires attorneys or parties making disclosures pursuant to Rule 26(a)(1) to certify that "to the best of the signer's knowledge, information, and belief, *formed after a reasonable inquiry*, the disclosure is complete and correct as of the time it is

made." *See id.* (emphasis added) (citing Rule 26(g)). In striking the fact witnesses, this Court noted, "[i]f a party is unwilling to conduct a reasonable inquiry in advance of making Rule 26(a)(1) disclosures, that party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses." *Id.* at *3 (citation omitted).

Here, Plaintiffs have given Saputo no information to differentiate among these witnesses, which does nothing to "accelerate the exchange of basic information and help focus the discovery that is needed, and facilitate preparation for trial or settlement." *Id.* at *2. Without more information, Saputo has no way to determine whether it must depose individual witnesses, gather other discovery related to their proposed areas of knowledge, or whether they simply possess knowledge peripheral to the real issues at hand. Saputo requests that the Court order Plaintiffs to supplement their initial disclosures and/or their responses to interrogatories No. 1 to provide Saputo more information about the knowledge these witnesses purportedly have relevant to the case.

## III. Third-Party Communications

Several of Saputo's discovery requests implicate communications that Plaintiffs or their agents, including counsel, may have had with third parties regarding this litigation. (Ex. F (S. Interrogatory No. 2); Ex. G (S. RFP No. 4); Ex. D (M. Interrogatory No. 4; Ex. E (M. RFP No. 4).) Plaintiffs initially objected on the basis of attorney-client privilege and a "right to privacy" but have since said they did not withhold any documents for those reasons. (Ex. N.) A purported "right to privacy" cannot protect Plaintiffs from having to produce responsive information. (*See infra*, Section IV.A.) And communications that

Plaintiffs or their counsel have with third parties to the litigation are not privileged. *Radiant Burners v. Am. Gas Ass'n*, 320 F.2d 314, 319 (7th Cir. 1963), *cert denied*, 375 U.S. 929 (noting that privilege applies when legal advice is sought from an attorney by a client).

Saputo has learned that Plaintiffs and their counsel have communicated with third parties about this litigation, some of whom are current Saputo employees. (Peterson Decl., ¶ 4.) In addition, Plaintiffs and/or counsel necessarily communicated with third parties regarding the pending litigation when obtaining declarations relevant to Plaintiffs' charges of discrimination, such as those provided by Dean Polzin and others. (*See, e.g.*, Ex. O.) Saputo requests that the Court order Plaintiffs to either state that they have not had *any* written communications with third parties regarding the facts related to or existence of this litigation or produce all responsive communications.

## IV.   Records Regarding Mitigation

Saputo also requested documents reflecting Plaintiffs' efforts (or lack thereof) to mitigate their damages by seeking new employment. (*See, e.g.*, Ex. F (S. Interrogatory No. 3); Ex. G (S. RFP Nos. 7, 8, 10); Ex. D (M. Interrogatory No. 3); Ex. E (M. RFP Nos. 7, 8, 10).) Strohschein identified two positions he has held since Saputo discharged him (Ex. F (S. Interrogatory No. 3)), but did not produce any evidence regarding his efforts to seek new employment, including but not limited to copies of resumes or job applications he submitted to potential employers, any other communications with potential employers, or any communications with potential references or requests for recommendations. Nor did he identify any employers with whom he tried to seek employment, other than those

where he received jobs. In addition, he did not produce any responsive information regarding his job performance and/or disciplinary history with new employers.[6]

Evidence regarding the extent to which Strohschein attempted to find new employment is directly relevant to whether he has met his obligation to mitigate his damages. Saputo requests that the Court order Strohschein to fully comply with Saputo's requests on this issue.

A.    **Plaintiffs' Tax Returns**

Saputo also requested that Plaintiffs produce complete and signed sets of their federal and state income tax returns for the years 2020 through the trial, which at this point would consist of Plaintiffs' 2020 and 2021 tax returns. (Ex. G (S. RFP 10); Ex. E (M. RFP 10).) Plaintiffs objected because, among other reasons, the requests seek documents "which would violate [Plaintiffs'] and potentially other third parties' right to privacy," (Exs. G, E), and have thus far refused to produce tax returns. (Ex. N ("We will not produce tax returns without supporting authority that they in fact, are required.").)

The "right to privacy" Plaintiffs cite is not a valid basis for withholding responsive information under Wisconsin or federal law. *See, e.g.*, *B.A. v. Bohlmann*, No. 09-cv-346, 2010 WL 11688335, at *3-4 (W.D. Wis. Nov. 12, 2010) (finding no "right to privacy" that prevents parties from responding to relevant discovery, specifically distinguishing a case

---

[6] Markgren asserts that he has not attempted to seek new employment because his health "significantly deteriorated" and he applied for and was granted disability benefits by Social Security. (Ex. D at 6.) If Saputo learns that Markgren has, in fact, sought work during the period after Saputo discharged him, it will renew its request that he produce the same kinds of responsive documents.

relying upon a California constitutional right to privacy, noting that it does not apply). A "right to privacy" is not an evidentiary privilege that prevents Plaintiffs from responding to discovery requests. *See id.*

Moreover, Plaintiffs have put their tax returns directly at issue by seeking damages related to lost wages. This Court has repeatedly held that tax returns are relevant evidence in cases when plaintiffs seek lost wages, to both validate and determine the extent of Plaintiffs' asserted damages. *See Begolli v. Home Depot*, Case No. 11-cv-380, 2014 WL 320071 (W.D. Wis. Jan. 29, 2014) (affirming discovery order and noting that Magistrate Judge Crocker explained to plaintiff at a hearing "in great detail why it was appropriate for defendant to ask for and obtain discovery such as medical records [and] tax returns."); *Hedin v. Sue Vinjue Trucking, Inc.*, Case No. 07-cv-717, 2009 WL 192450, at *1 (W.D. Wis. 2009) (granting defendant's motion to compel four years of Plaintiffs' tax returns because they are relevant to the determination of damages); *Scheffler v. Cty. of Dunn*, Case No. 08-cv-622, 2009 WL 1249291 (W.D. Wis. May 6, 2009) (compelling production of three years of tax returns because they are relevant to a claim for lost wages); *Woodard v. Rock Cty., Wis.*, 16 F.3d 1226 (7th Cir. 1994) (affirming district court dismissal of plaintiff's claims when plaintiff refused to produce tax returns in response to valid discovery requests).

Here, Plaintiffs' tax returns are highly relevant to the calculation of their alleged damages. Saputo respectfully requests that Plaintiffs be ordered to produce their 2020 and 2021 tax returns.

## V.     Medical Records

Saputo next requests that the Court require Plaintiffs to sign authorizations permitting Saputo to obtain the Plaintiffs' medical records, or risk having the relevant portions of their claims and requests for damages dismissed. Saputo has received conflicting answers on the issue of medical records and needs to have fulsome information about their medical conditions as well as their alleged damages related to their medical conditions before it can depose Plaintiffs. Indeed, both Plaintiffs assert that they have suffered emotional distress damages. And Markgren's health is not only relevant to the merits of his claims, including his claims for failure to accommodate a disability, but he also alleges he is entitled to damages related to deteriorating health he asserts is a result of his termination.

This Court has previously held that Plaintiffs must either sign medical authorizations or dismiss portions of the case (or withdraw claims for damages) to which these records are relevant. In *Mosby v. Cavey*, No. 08-cv-677, 2009 WL 2999149 (W.D. Wis. Sept. 18, 2009), for example, this Court wrote:

> This court will never order a party to sign a medical records release form. A litigant always has the option of maintaining the privacy of his medical records above all else. However, once this court has determined that information contained in those records is directly relevant to material issues in the lawsuit, then a party's decision not to sign a release will have consequences commensurate with the importance of the records. In this case, plaintiff's medical records contain information that likely goes to the heart of plaintiff's claims against defendants. Therefore, if plaintiff decides that he does not wish to disclose his relevant medical records as part of discovery in this case, then it is likely that this court would dismiss plaintiff's lawsuit.

- 13 -

*See also Delyon v. Wal-Mart Stores, Inc.*, NO. 07-cv-291, 2007 WL 5414905, at *2 (W.D. Wis. Nov. 16, 2007) (noting that defendant is entitled to plaintiff's medical records when plaintiff claims damages for emotional distress, and noting that "if a litigant declines to produce such records when they are relevant to his case, then the court will excise from the lawsuit any claims, evidence or argument to which such records are relevant.")

Here, Plaintiffs have repeatedly failed to give Saputo straight answers about (1) whether they have identified all relevant medical providers; (2) whether they have produced and/or collected all responsive medical records; or (3) whether they are willing to sign medical authorizations. At this point, given the ever-changing answer to the question of whether Plaintiffs have produced all relevant medical records, Saputo requests that the Court tell Plaintiffs that they must either sign medical records authorization forms for each responsive document, or forfeit any portion of their claims or damages for which those medical records are relevant.

## CONCLUSION

For the reasons detailed above, Saputo respectfully requests that this Court compel Plaintiffs to provide complete discovery responses. More specifically, Saputo respectfully requests that the Court order Plaintiffs to provide the following information:

1. **Witnesses with knowledge.** Detailed descriptions of the scope of knowledge of each witness identified in Plaintiffs' initial disclosures and Responses to Saputo's Interrogatories No. 1, as required by Fed. R. Civ. P. 26(a)(1)(A)(i).

2. **Third-party communications.** Confirm in writing that Plaintiffs and/or their counsel have not communicated in writing (including, *inter alia*, via social media or text messages) with any third parties regarding this litigation or produce all responsive communications.

3.    **Records regarding Strohschein's remediation efforts.** Produce all records regarding Strohschein's search for alternative employment after his discharge from Saputo, including but not limited to copies of resumes or job applications he submitted to potential employers, any other communications with potential employers, any communications with potential references or requests for recommendations, and/or identify any employers with whom they have tried to seek employment.

4.    **Tax returns.** Produce copies of Plaintiffs' 2020 and 2021 state and federal tax returns.

5.    **Medical records.** Sign authorizations for each relevant medical provider so that Saputo can obtain the records itself.

Saputo also requests that Plaintiffs pay Saputo's attorneys' fees in connection with bringing this motion consistent with Fed. R. Civ. 37(a)(5).

Dated:     July 25, 2022                    Respectfully submitted,

By: */s/ Emily M. Peterson*

Elizabeth B. McRee (IL No. 6275501)
JONES DAY
77 W. Wacker Drive, Suite 3500
Chicago, IL 60601
312.782.3939
emcree@jonesday.com

Emily M. Peterson (MN No. 0395218)
Bayley F. Johnson (MN No. 0400325)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
612.217.8800
epeterson@jonesday.com
bfjohnson@jonesday.com

Tanya M. Salman (No. 1089151)
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Phone: 608.257.3501
Fax: 608.283.2275
tmsalman@michaelbest.com

*Attorneys for Defendant Saputo Cheese
USA, Inc.*