# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

PETER MARKGREN,

    Plaintiff,

  v.                                           Case No. 3:21-CV-00429-jdp

SAPUTO CHEESE USA, INC.

    Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

## I. INTRODUCTION

Peter Markgren was wrongfully terminated in 2019 after working for Defendant and its predecessors since 1987. He didn't violate a lockout/tagout procedure because there was **none** for the tower of the machine he operated. He'd followed the lockout/tagout procedure for the augers which he'd cleaned out before he moved to the tower. Days later he didn't intentionally bump into a co-worker as he was leaving. He panicked because he thought he was having a heart attack – his supervisor told him he could leave for the day. What caused his panic? The same two younger workers who'd been harassing him for two years turned off a hose he was using to clean cheese up off the floor then yelled at him and laughed about it. He'd had a heart attack at work years prior, felt his heart starting to hurt and didn't want to repeat the attack. He was adamant he did not touch either of the coworkers as he passed them through a narrow walkway as he was headed for the exit.

Under the Title VII, the ADA and the ADEA, where there is no direct evidence, a plaintiff is allowed circumstantial evidence to prove he/she was discriminated against. Of note, though Defendant filed a motion for summary judgment which Plaintiff opposed, no ruling has been received from the Court.

Based upon the foregoing, on April 19, 2023, while discovery was still open, Plaintiff served Requests for Admission, one interrogatory and 12 additional requests for documents. Defendant did not adequately meet and confer prior to filing its motion for protective order. Yet, Plaintiff has agreed to narrow and/or withdraw some of the discovery served in April 2023. The remaining discovery is relevant to his case.

**FACTUAL AND PROCEDURAL BACKGROUND**

As background, Mr. Markgren worked for Saputo and its predecessor since 1987. He'd had a heart attack at work, had stents put into his heart and legitimately had a disability related to his heart. His physician limited him to working in an environment not to exceed 100 degrees but the plant often exceeded that temperature in summer. He still came to work even after his multiple requests for reasonable accommodations through the years were ignored. In November 2018, he underwent major back surgery and returned to work in the Spring of 2019. He was terminated a few short months later for false reason including for (a) violating the lockout/tagout procedure on December 23, 2019 and (b) for bumping into a co-worker as he was leaving on December 28, 2019. He didn't do either and Schurman knew that but purposefully didn't tell the decision-maker, Plant Manager David Miller. In fact, she and her associate, Jennifer Ellefson, told him the opposite.

On December 23, 2019, two separate parts of Mr. Markgren's machine plugged with cheese. He locked-out/tagged out the augers then cleaned the cheese out of them. He then

cleaned out the tower; however, there were no lockout/tagout procedures for that part of the machine. Never had been. They were created *after* he was terminated. Bertelsen's email to Schurman clearly states that moving forward she'd write a new standard operating procedure for cleaning out the tower.

On December 28, 2019, Mr. Markgren's machine again plugged with cheese. He locked it out and cleaned it with cheese falling to the floor which he needed to clean up. He started one hose to clean up the cheese – walked around to the other side of the machine to turn on a second hose – then returned to the first to find it turned off. One doesn't just turn off a hose – one needs a pliers to do so. Only one employee had a pliers in his pocket – Anthony Selkow. Mr. Markgren asked him why he turned the hose off in response to which, another employee, Dylan Skow, stepped in and ordered Mr. Markgren to go back down to his end of the production floor. Mr. Markgren went but could hear them laughing. Mr. Selkow and Mr. Skow had been stealing Mr. Markgren's tags and protective gear repeatedly for two years. He complained to his supervisor, in compliance with company policy, but nothing was done. That day, Mr. Markgren panicked. He'd had a heart attack at work before, felt his heart hurting and didn't want to wake up on a gurney a second time. He called his supervisor and asked to leave. She said o.k. and as he was leaving he passed Mr. Skow and Mr. Selkow where the walkway was very narrow because the cheese rack was there. Mr. Skow accused Mr. Markgren of hitting him as he passed. Mr. Markgren never did as corroborated by another witness who was never spoken to by Human Resources.

The ultimate decision-maker, Plant Manager David Miller ("Miller"), testified he relied on information from Human Resources (Schurman and/or Ellefsen) and possibly Tammy Bertelsen in Safety to make his decision. He also testified that he was told that (a) Mr. Markgren

violated the lockout/tagout procedure on December 23, 2019. He couldn't have because there was none for the tower; and that (b) Mr. Markgren intentionally bumped into Mr. Skow as he was leaving on December 28, 2019. He never did but being a gentleman, Mr. Markgren apologized if he'd have accidentally done so. Miller never learned that (a) Mr. Markgren had been harassed by Mr. Selkow and Mr. Skow for two years and on the morning of December 28, 2019, (b) Mr. Markgren felt he was going to have a heart attack because of Mr. Selkow's and Mr. Skow's actions towards him and (c) another witness saw Mr. Markgren pass and said there was no contact. ***Miller testified that all of this information would have been important for him to know to make a proper decision***. Thus, the jury could find that Schurman and Ellefsen poisoned the well of the decision-making process resulting in Plaintiff's termination. Indeed, if Miller had possessed complete information, Plaintiff would still be employed. *Bergene v Salt River Project Agricultural* (9th Cir 2001); *Jiles v Ingram* (8th Cir 1991) 944 F.2d 409, 413.

Schurman, Ellefson, Miller and Housner all began working for Saputo in 2019. But Bertelsen had been employed since ***March of 2017***. In summary judgment, Defendant has argued that Miller also relied on Shann Munson, Mr. Markgren's supervisor who'd been employed since ***1981***. Munson reported to Steve Schilke, the Production Manager in the old plant, who'd been employed ***since 1979.*** Thus, Defendant's limitation of information regarding other employment actions and similarly situated employee information from January 2019 forward is way too limited.

On January 27, 2023, Defendant filed a motion for summary judgment in this matter (See Dkt #54-63). On February 21, 2023, Plaintiff filed an opposition (See Dkt starting at 82). To-date the Court has not ruled on Defendant's motion and trial is set for June 26, 2023.

For the next two months, Plaintiff's counsel, a sole practitioner, started opposing Defendant's Motion for Summary Judgement in the Strohschein matter which settled; prepared the appellate record in another matter; drafted filed and served a civil complaint in another matter and propounded and responded to discovery in other matters. Each such project had related deadlines for processing and/or filing.

On April 19, 2023, Plaintiff served Interrogatory No 25, Requests for Production of Documents Nos 102-113 and his first set of Requests for Admissions based on deposition testimony and documents produced in this matter. (See **Exhibits E and F** to Declaration of Kristin Berger Parker Dkt 109)

### III.     LEGAL ARGUMENT

####    A.     Defendant's Motion for Protective Order Is Insufficient

To obtain a protective order, the party resisting discovery or seeking limitations thereon must show "good cause" for its issuance. (FRCP 26(c)(1); *Jepson, Inc. v Makita Elec. Works, Ltd.* (7th Cir 1994) 30 F3d 854, 858. Good cause means the party must make a clear showing of a particular and specific need for the order. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the rule 26(c) test. *Foltz v State Farm Mut. Auto. Ins. Co.* (9th Cir 2003) 331 F3d 1122, 1130. Relevant factors including (a) whether the information sought is for legitimate purposes; (b) whether disclosure would violate any privacy interest, cause any embarrassment to a party etc; (c) whether sharing of information among litigants will promote fairness and efficiency in the litigation etc. *Pansy v Borough of Stroudsburg* (3rd Cir 1994) 23 F3d 772, 787-791. Indeed, the party seeking the protective order has the burden of showing a *specific injury*. *Pearson v Miller (*3rd Cir 2000) 211 F3d 57, 72-73. Finally, even if good cause is shown, the court must still balance the interests in allowing

discovery against the relative burdens to the parties. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.* (19th Cir 1982) 669 F.2d 620, 623.

Defendant has not provided any such good cause. Instead, Defendant attacks the discovery itself by accusing Plaintiff of purposefully waiting until 30 days before discovery ends to serve this discovery to somehow gain an advantage. Nothing is further from the truth. Plaintiff is a sole practitioner that opposed Defendant's summary judgment motion earlier in 2023, started an opposition against Defendant in the Strohschein matter and litigated other unrelated matters. In contrast, Defendant identifies *four* attorneys on each pleading plus employs a myriad of paralegals and assistants.

Defendant next argues that Plaintiff's RFAs is a wild-eyed hope that Defendant will fail to answer. Not true. As set forth below, the majority of Plaintiff's RFAs are based on discovery in this matter as it relates to the elements which Plaintiff must prove in his discrimination, harassment, and failure to reasonably accommodate his disabilities claims in this matter.

Finally, after meeting and conferring, Plaintiff has agreed to completely eliminate his Interrogatory No 25 except as it relates to one RFAs; withdrew 3 requests for documents and withdraw two of his RFAs including Nos 46 and 145. Plaintiff is also still waiting for a list from Defendant of the RFAs to which it will agree for pre-trial purposes, a compromise proposed by Defendant itself.

    **B.**     **Status of Plaintiff's Discovery After Meeting and Conferring**

        **1.**     **Plaintiff's Interrogatory No 25 Has Been Resolved**

During the meet and confer process, Plaintiff agreed that his Interrogatory No 25 would only apply to Request for Admissions No 30 given Federal Rule of Civil Procedure No 36 requires Defendant explain why it cannot truthfully admit or deny a request or part thereof and

must respond to the substance of the matter unless it does not have the knowledge to do so. As such, this Interrogatory has been resolved between the Parties.

## 2. Plaintiff's Requests for Production of Documents Are Relevant

During the meet and confer process, including because Defendant produced two documents relating to the employment of Dylan Skow, Plaintiff agreed to withdraw Requests for Productions Nos 105, 112-113.

The remaining requests seek relevant documents. Significantly, No 102 seeks hand-written notes taken by a key witness, Julia Schurman-Fossom, Human Resources Director for Saputo, which she took during Mr. Markgren's deposition in this matter. Those notes are not protected by the Attorney-Client privilege and must be produced. Indeed, they were taken during Plaintiff's deposition in a small room. Plaintiff's deposition was conducted by Defense Counsel in this matter. At no time did anyone state that Ms. Schurman-Fossum was taking said notes for or on behalf of or at the direction of Defense Counsel. Indeed, Defense Counsel was making her own notes and the deposition was attended by the Court Reporter who was transcribing the questions and Plaintiff's responses.

**No 103** is seeking a picture of the area where Mr. Markgren passed Mr. Skow as he was leaving on December 28, 2019. This is relevant to show the jury just how narrow the passage way was. Indeed, Mr. Markgren has always denied bumping into Mr. Skow as he was leaving. He also apologized and said if he had (which he did not think he did because he never felt anything touch him) it was because of the narrowness of the area and his having a panic attack at the time. Defendant has produced two other pictures in this matter – a portion of the rotary press machine operated by Mr. Markgren and his locker. Defendant will likely use those pictures for their benefit and likely are refusing to produce a picture of the passage-way because it will benefit Plaintiff.

**No 104** – this request is key to proving Plaintiff's *prima facie case*. Other employees have declared that Megyn Kelsch, a much younger new hire, replaced Mr. Markgren on his

machine. Defendant contends it hired a temporary employee but has not provided the dates or duration that this temporary employee worked on Mr. Markgren's machine nor who Defendant hired on a permanent basis to replace Mr. Markgren. Without this complete information, Plaintiff is limited in his ability to prove his discrimination claims.

**No 105** has been withdrawn.

**No 106** Defendant has argued that it did not discriminate against Mr. Markgren because of his age then argues it has hired older workers producing hire information for the old plant but not the new plant. This is relevant because the four decision-makers were responsible for the old and the new plant. The temporal scope of the request is limited to 2019 to present.

**No 107** – Defendant has terminated several older employees, supervisors and managers including Mr. Markgren, Mr. Strohschein, Shann Munson (constructively terminated) who was Mr. Markgren's supervisor and Mr. Schilke who managed the old plant under Mr. Miller. If they were all replaced by younger individuals it shows a pattern and practice of Defendant terminating older employees and replacing them with younger employees.

**Nos 108-111** are relevant because Defendant terminated Mr. Davis and Mr. Kapaun for alleged policy violations and are comparing their actions towards Mr. Davis and Mr. Kapaun as being similar to their actions towards Mr. Markgen **but Defendant's information is incomplete**. Indeed, Plaintiff seeks information to determine whether or not these individuals are or are not similarly situated to Mr. Markgren. What policy did they violate? How did they violate said policy? Did they have any discipline in their files prior to the policy violation leading to their termination? Thus, again, these requests are relevant. Furthermore, Defendant produced the spreadsheet containing these two individuals' names in late November 2022 *after Plaintiff had taken the depositions of the four decision-makers in this matter.*

**Nos 112 and 113** have been resolved.

### 3. Plaintiff's Requests for Admissions

The Rutter Group Practice Guide Fed. Civ. Proc. Before Trial, Ch 11(IV)-D describes Requests for Admissions (RFA) as a discovery device with two functions – (i) to determine the opposing party's contentions; and (ii) narrow the scope of the case by removing issues from the case once and for all. Whatever is admitted is conclusive and false denials may result in sanctions. They may be used to obtain any evidence within the permissible scope of discovery – i.e., any nonprivileged matter that is relevant to any party's claim or defense and are proportional to the needs of the case. They can be used to establish factual matters, opinions, mixed questions of law and fact and the ultimate issues in a case. (FRCP 36(a)(1)(A); 36(a)(1)(B); *Marchand v Mercy Med. Ctr.* (9th Cir 1994) 22 F3d 933, 937 fn4)

Further, FRCP 36 does not place a limit on the number of RFAs which a party can propound. Plaintiff's RFAs were served 30 days prior to the discovery cut-off in this matter. Defendant's responses can be used as evidence in trial of this matter. *American Auto. Ass'n (Inc.) v AAA Legal Clinic of Jefferson Crooke, P.C.* (5th Cir 1991) 930 F2d 1117, 1120. Defendant, as the responding party, is required to admit or deny the requests including making reasonable inquiry about the requests before responding.

Admissions are also binding and cannot be explained away or contradicted by other evidence including if a party simply fails to respond. *In re Carney* (5th Cir. 2001) 258 F2d 415, 421; *United States v Kasuboski* (7th Cir 1987) 834 F2d 1345, 1349.

Plaintiff has agreed to withdraw RFAs Nos 46 and 145. Plaintiff is also waiting for Defendant's list of RFAs to which it will agree for pre-trial purposes and which Defendant itself proposed as a way to resolve the dispute over Plaintiff's RFAs. Plaintiff accepted Defendant's proposal. Upon receipt of Defendant's list, Plaintiff further agreed to review the remaining RFAs to determine whether or not there were additional requests which could be withdrawn. As such, Defendant's motion for a protective order on Plaintiff's RFAs is premature and must be denied on that basis alone.

Defendant argues that Plaintiff's RFAs will not narrow the issues, are inflammatory, impossible to admit or deny and seek a legal conclusion. Plaintiff disagrees. His RFAs are based on sometimes conflicting written responses to interrogatories, statements made in documents and deposition testimony.

RFAs Nos 9, 12, 15, 18, 21 and 24 are imperative given Defendant has asserted several times that to have accommodated Mr. Markgren would have resulted in an undue hardship. Yet, Defendant never stated how Mr. Markgren's request would've resulted in an undue hardship? How much would it have cost to fix the air conditioner that was already in place but not working or put in a fan at the same time Saputo had enlarged the lower make room itself? What undue hardship would have resulted from allowing Mr. Markgren to wear lighter weight personal protective gear because he couldn't breath and became extremely overheated while wearing the bulky, heavy protective gear in place. Indeed, under the Americans With Disabilities Act an employer is required to reasonably accommodate an employee *unless* to do so would result in an undue hardship. 42 U.S.C. §12112(b)(5)(A), (B). Only once in his 30 years of employment did Defendant reasonably accommodate Mr. Markgren by reducing the weight of a heavy pan by making two smaller pans. This was done prior to the four decision-makers being employed by Defendant.

No 33 is not seeking a legal conclusion. In employment, there is a distinction between different levels of supervisors and what their authority is. In this case, Mr. Markgren reported being harassed for two years to his supervisor, Shann Munson, yet she did nothing about it. Mr. Miller testified she should have. Thus, this is seeking information regarding the duties and responsibilities as expected by Saputo of its first line supervisors, not as defined in law.

No 67 is not "inflammatory". It is based on the events of what happened in 2000. This request and similar requests are relevant to show that Plaintiff had a history of heart problems while employed including *at work*. This incident led to the restriction that he not work in temperatures exceeding 100 degrees Fahrenheit.

Nos 84 and 91 are not improper.  If Defendant cannot answer them, despite having notes regarding the same, then Defendant must so state.  Indeed, Mr. Markgren relayed that he was fearful for his life on December 28, 2019 and that he did not feel Dylan Skow touch him or lean into him as he was leaving that day.

Nos 98-102 are based on emails which Defendant's witnesses did not remember whether they saw or not before deciding to terminate Mr. Markgren even though their names were on the email address lines.

No 141 is important because Defendant argues that Mr. Markgren was terminated because he had "a pattern" of disruptive behavior relying on notes in his personnel file from 2006 and 2011.  Yet, none of the decision-makers read his file before terminating him.  Thus, by responding to this RFA Defendant's argument is eliminated because none of the decision-makers had any knowledge of the 2006 or 2011 events which Defendant also takes completely out of context.

As set forth multiple times, once Defendant provides a list of RFAs to which it will agree for pre-trial purposes, Plaintiff has agreed to again review the remaining RFAs further to determine whether or not any additional requests would be withdrawn.  As such, the parties are still meeting and conferring on Plaintiff's RFAs.

/ / /

/ / /

11
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## IV. CONCLUSION

For the foregoing reasons, including because Defendant did not meet its burden in seeking the protective order and Defendant's meet and confer efforts remain incomplete as to Plaintiff's RFAs, Defendant's motion for a protective order must be denied.

DATED: May 11, 2023

/s/ *Beth A. Huber*
Beth A. Huber
State Bar Number: 1120263
Huber Law LLC
N1131 County Road L
Watertown, WI 53098
Email: bhuber@huberlawfirm.net
Telephone: 415 497 9173
Facsimile: 920 542 6090
**ATTORNEYS FOR PLAINTIFF
PETER MARKGREN**