# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

PETER MARKGREN,

        Plaintiff,

v.                                       Case No. 3:21-cv-00429-jdp

SAPUTO CHEESE USA INC.

        Defendant.

**PLAINTIFF PETER MARKGREN'S RESPONSE AND OPPOSITION TO DEFENDANT SAPUTO CHEESE USA INC'S MOTIONS IN LIMINE NOS. 1-10 AND MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff's responses and objections to Defendant's ten Motions in Limine are set forth herein.

All of Plaintiff's evidence to be presented at trial are based upon his disabilities and Defendant's failure to reasonably accommodate those disabilities as set forth in his first amended civil complaint ("FAC") filed on December 7, 2022, after Daryl Strohschein's allegations were severed from those of Plaintiff. (See Dkt Nos 31, 35)

In Plaintiff's FAC, Paragraphs 10, 67, 72 - In 2012, Mr. Markgren suffered a heart attack after which he underwent heart surgery for angioplasty and two stents were placed in his heart. In 2013, another stent was placed in his heart and he later fainted at work due to an extremely high temperature of over 100 degrees Fahrenheit. He was diagnosed with coronary artery disease. In

2013, he was also given the work restriction of not working when the plant temperature was 100 degrees or higher.

Paragraphs 11, 68 - In 2014, Mr. Markgren was diagnosed with sciatica and had problems for the remainder of his employment.

Paragraphs 12, 73 - In 2017, Mr. Markgren requested to transfer to the new plant but was told he couldn't unless he took a $2.00/hour reduction in pay. He could not afford the reduced pay.

Paragraph 13, 74 - In 2017, Mr. Markgren also requested to wear lighter weight personal protective gear, as he had for years, but his request was denied.

Paragraph 15, 69-70 – In July 2018, Mr. Markgren went to the emergency room complaining of being dizzy, clammy, sweaty and weak. The plant temperature was 107 degrees then entered a specialized cardiac program for two months. He also underwent major back surgery for anterior and posterior lumbar fusion with decompression and laminectomy.

Paragraph 16, 71 – at all times, Defendant was aware of Mr. Markgren's disabilities and requests for accommodation.

Paragraph 23 – On December 28, 2019, after Dylan Skow and Anthony Selkow were yelling at him, Mr. Markgren became extremely upset, started shaking and his heart started racing…he was extremely afraid he'd have another heart attack at work. Munson noted that Mr. Markgren was physically shaking.

Paragraphs 25-26, 78 – On December 28-29, 2019, Mr. Markgren explained to Human Resources (Julia Schurman-Fossum) that his heart had been racing, he was getting sweaty and clammy and had to leave because he was extremely anxious that he'd suffer another heart attack.

Paragraphs 12-13, 15, 72-75, 77-78 – Defendant did not reasonably accommodate Mr. Markgren when he requested accommodations especially as it related to his heart.

Paragraphs 80-83 – as a result of Defendant's failure to accommodate his disabilities, Mr. Markgren has suffered lost wages and benefits, emotional distress damages and is entitled to punitive damages under the Americans With Disabilities Act 42 U.S.C. §12101 *et seq* ("ADA")

All of Plaintiff's exhibits will show and witnesses will testify regarding his disabilities, Saputo's and his managers' knowledge of his disabilities, Defendant's failure to reasonably accommodate those disabilities and the ramifications of Defendant's failure to accommodate his disabilities all of which are relevant under Fed. R. Evidence §§ 401-402. Because the evidence will prove Mr. Markgren's claims, which Defendant does not want to happen, it is not excludable under Fed. R. Evid 403 because there is no unfair prejudice much less any prejudice that would substantially outweigh the probative value for which Mr. Markgren's evidence is offered. Indeed, none of the evidence Mr. Markgren intends to offer at trial would substantially prejudice Defendant. Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis or if the evidence appeals to the jury's sympathies, arouses its sense or horror or otherwise might cause the jury to base its decision on something other than the legal propositions relevant to the case. *Carter v Hewitt* (C.A. 3 (Pa) 1980) 617 F.2d 961. Only where the trial court finds prejudicial effect of proffered evidence to exceed its probative value should evidence be excluded. *Shepherd v General Motors Corp.,* (C.A. 1 (N.H.) 1970, 423 F.2d 406. See also *Milwaukee Electric Tool Corporation v Snap-On Inc.* (E.D. Wis 2017) 288 F.Supp.3d 872.

Thus, all of Defendant's Motions in Limine must be denied, limited or ruled on at trial as argued below.

/ / /

/ / /

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE NO. 1 TO EXCLUDE FACTS FORMING THE BASIS OF
PLAINTIFF'S DISMISSED CLAIMS**

Federal Rule of Evidence ("FRE") 402 allows relevant evidence to be admitted while FRE 403 states that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay etc. The analysis is generally fact and context specific. *Sprint/United Management Co v Mendelsohn (*US 2008) 128 S.Ct 1140, 552 U.S. 379. Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis or if the evidence appeals to the jury's sympathies, arouses its sense or horror or otherwise might cause the jury to base its decision on something other than the legal propositions relevant to the case. *Carter v Hewitt* (C.A. 3 (Pa) 1980) 617 F.2d 961. Where the trial court finds prejudicial effect of proffered evidence to exceed its probative value, evidence must be excluded. *Shepherd v General Motors Corp.,* (C.A. 1 (N.H.) 1970, 423 F.2d 406. See also *Milwaukee Electric Tool Corporation v Snap-On Inc.* (E.D. Wis 2017) 288 F.Supp.3d 872.

While judges have broad discretion in ruling on evidentiary questions during trial or before on motions in limine, the court should only exclude evidence if the evidence clearly is not admissible for any purpose. *Hawthorne Partners v AT&T Technologist, Inc*. 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy and prejudice may be resolved in context. *Id.* at 1400-1401. The purpose of a motion in limine is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose.

*Washington Frontier League Baseball, LLC v Zimmerman,* No. 14-cv-1862, 2018 WL 3120623, at

*2 (S.D. Ind. June 26, 2018); See also *Barnes v General Motors LLC* 4:20-cv-00087-TWP-KMB

2023 WL 34360988 (S.D. Ind. May 12, 2023) (evidence that the plaintiff was denied a reasonable

accommodation and terminated after seeking one could be evidence of both his disability

discrimination and retaliation claims and therefore, because the disability discrimination claim

survived summary judgment, the Court declined to preclude that evidence and denied the

defendant's motion in *limine*)[1]

      Here, Plaintiff's disabilities, including relating to his heart, began in 2012 when Mr.

Markgren had a heart attack at work. Coronary artery disease is not something that heals over

time. Rather, Mr. Markgren remains disabled today as defined under the ADA because of his

coronary artery disease. During the latter years of his employment, Defendant repeatedly failed to

reasonably accommodate those disabilities including but not limited to when Defendant did not

transfer him to the new air-conditioned plant in 2017. Then on December 28, 2019 when Mr.

Markgren sincerely believed he was going to have a heart attack at work after Anthony Selkow

turned off the hose, Dylan Skow yelled at him then both Skow and Selkow laughed at him. He

called Shann Munson, his supervisor, and asked to immediately leave because staying at work

would not be good for him. Mr. Markgren's panic and fear of having a heart attack was greatly

impacted by the fact that Selkow and Skow had hidden his PPG or lock out tags for over two years

and was never abated. Markgren had previously told Munson that their actions were causing him

---

[1] Defendant's caselaw is factually distinguishable from this matter. In *Ledford v Lamartz* 462
F.Supp.3d 905 (N.D. Ind. 2020) the plaintiff merely argued that evidence relating to the dismissed
claims needed to be introduced to preserve any appellate issues. How they were relevant to the
remaining claim was not argued. In *Littleton v Pilot Transportation Center* 2006 WL 751285 (E.D.
Ark 2006) the plaintiff argued that the evidence was relevant for punitive damages but not how it
related to the remaining claim of race discrimination; in *Targonski v City of Oak Ridge* 921
F.Supp.2d 820 (E.D. Tenn. 2013) evidence of lost wages was not admissible because the court
previously ruled that the plaintiff had not been constructively terminated. Here, there is no question
that Plaintiff was terminated and he argues, that Defendant's failure to reasonably accommodate his
disability played a part in that termination given he believed he was going to have a heart attack on
December 28, 2019.) That cause of action survived Defendant's motion for summary judgment.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S TEN      MOTIONS IN LIMINE TO EXCLUDE RELEVANT
EVIDENCE

anxiety and making it unsafe because of his heart yet Defendant did nothing to stop his PPG or lock out tags from disappearing. (See Dkt #34, ¶¶ 77-78) Thus, these all constitute factual, relevant evidence in support of Plaintiff's claim that Defendant failed to reasonably accommodate his disabilities and has nothing to do with his dismissed harassment or discrimination claims. Instead, it goes to his state of mind in December 2019 and the adverse effect the events of that day had on his heart and Defendant's failure to reasonably accommodate him.

Further, Mr. Markgren's panic and fear of having a heart attack affected his response to Selkow's and Skow's ridicule on December 28, 2019. The ADA makes it an "unlawful employment practice" for an employer to discharge a person "because of . . . [his] disability." 42 U.S.C. § 12112(a). An employer discharges an employee "because of" his disability when it fires the employee for conduct, which was caused by the disability. (*Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1139-1140 (employer only offered one accommodation and denied subsequent requests and the employee lost her job); *Den Hartog v. Wasatch Academy* (10th Cir. 1997) 129 F.3d 1076, 1086; *Borkowski v. Valley Cent. School Dist.* (2d Cir. 1995) 63 F.3d 131, 135; *Teahan v. Metro-North Commuter Railroad* Co. (2d Cir. 1991) 951 F.2d 511, 515-517; *Schmidt v. Safetyway, Inc.*, *supra*, 864 F.Supp. at 1001-1002)

Once an employer becomes aware of the need for accommodation, it has a mandatory duty to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations, the court held. Since the obligation to accommodate is a "continuing duty that is not exhausted by one effort" (*Humphrey,* 239F.3d. at p. 1138, quoting *McAlindin v. City of San Diego* (9th Cir. 1999) 192 F.3d 1226, 1237.

Second, for purposes of the ADA, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination, the court held. ***The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.*** Here, on December 28, 2019, Markgren panicked because he'd been harassed by Selkow and Skow for two years and because he was afraid that he

was going to have a heart attack.  The combination made it urgent that he leave work that day.  Doug Strohschein described Markgren as being intent on getting out.  Thus, his heart disability affected how he acted on December 28, 2019.  See also In *Borkowski v. Valley Cent. School Dist., supra*, 63 F.3d 131 – teacher who couldn't control her students requested reconsideration of the tenure decision citing her disability.  The district rejected her request.  Summary judgment was denied because the district knew of her disabilities and therefore, had an "affirmative obligation" to make reasonable accommodation to these known disabilities.  "Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge . . . *because of* the disabilities."

As such, Mr. Markgren's disabilities, including as they related to his heart on December 28, 2019 are relevant to his cause of action that Defendant failed to reasonably accommodate his disabilities and must be admitted at trial.  The overlap between these claims is not negligible and the evidence will tend to prove Mr. Markgren's claim that Defendant failed to reasonably accommodate his disabilities.

Defendant then argues that if this evidence is admitted that it will be prejudicial; however, Defendant does not state why or how.  Fed. R. Civ. Proc 403 favors admissibility of relevant evidence and should be invoked very sparingly to bar its admission.  *Hendrix v Raybestos-Manhattan, Inc.* C.A.11 776 F.2d 1492 (C.A. 11 Ga 1985)  In balancing the probative value of evidence against its prejudicial effect, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.  *World Wide Ass'n of Specialty Programs v Pure, Inc.* 450 F.3d 1132 (10th Cir 2006) Even inflammatory evidence is not necessarily prejudicial but in fact, has probative value including here as to whether or not Defendant reasonably accommodated Mr. Markgren's disabilities.  *Robinson v Runyon* 149 F.3d 507 (6th Cir 1998)(co-employees' circulated fake employment application incorporating racial stereotypes was not more prejudicial than probative in Title VII race discrimination action because it was purportedly probative of discriminatory motives)  Furthermore, where evidence is admitted,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S TEN          MOTIONS IN LIMINE TO EXCLUDE RELEVANT
EVIDENCE

the court could instruct the jury that the evidence was to be used only for the purpose of determining whether or not Defendant reasonably accommodated Plaintiff's disabilities. *Jones v TEK Industries, Inc.* 319 F.3d 355 (8th Cir 2003) Therefore, the final incident leading to Plaintiff's termination, as argued above, is directly relevant to his claims of Defendant's failure to reasonably accommodate his disabilities because Mr. Markgren told both Munson and Schurman-Fossum that his heart was bothering him that day because of the encounter with Selkow and Skow and that he was afraid he'd have another heart attack if he didn't immediately leave work. Therefore, it is an appropriate question for the jury to determine whether or not Defendant should have retained Mr. Markgren as an employee as a reasonable accommodation for his coronary disabilities.

Defendant finally threatens that if evidence is allowed to come in regarding Mr. Markgren's disability and how it affected him on December 28, 2019 that it would be forced to offer evidence that Plaintiff's dismissed claims lack merit. Plaintiff is not re-arguing his discrimination, retaliation or harassment claims or the inept "investigation" that led to his termination. Thus, there is absolutely no need for Defendant to offer said evidence. Furthermore, for Defendant to do so would substantially prejudice Plaintiff. Simply put, Defendant does not want the jury to hear the full scope of its utter failure to reasonably accommodate Plaintiff's disabilities. Given the relevancy of such testimony to Mr. Markgren's claim that his disabilities were not reasonably accommodated, Defendant's Motion in Limine No 1 must be denied.

### PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF PLAINTIFF'S UNRELATED WORKPLACE INJURIES AND MEDICAL HISTORY PREDATING HIS HEAT RESTRICTION

Defendant's second motion in limine is based on the faulty and erroneous premise that Mr. Markgren did not request reasonable accommodations prior to 2013 when his physician restricted him from working in the factory when the temperature exceeded 100 degrees Fahrenheit. He did and in fact, he testified that as early as 2000 he fainted at work when the temperature reach 107 degrees. In 2006 he was diagnosed with serious depression. He had a heart attack at work in 2012

after which he had 2 stents placed in his heart.  He testified that he verbally requested several accommodations on multiple occasions including that the fan be fixed or a larger one be installed; the air conditioning unit on the roof be fixed; someone help him clean the machine; if he could wear lighter personal protective gear as he had earlier and if he could transfer to the new plant. Defendant did not grant any of these requests for accommodations which resulted in Mr. Markgren being driven to the ER on July 1, 2018 by Munson when he was diagnosed with heat exhaustion and him panicking on December 28, 2019 requesting he immediately leave work. Thus, all of the issues and facts related to Plaintiff's coronary artery disease and other disabilities going back to 2000 are relevant to his claim that Defendant failed to reasonably accommodate his disabilities from then forward.

Further, there is no doubt that Defendant knew of Plaintiff's disabilities especially as they related to his heart.  (See *Hedberg v Indiana Bell Telephone Company, Inc.* 47 F.3d 928 (7th Cir 1995) where an employee tells his employer that he has a disability or where symptoms are so obvious, it would be reasonable to infer that the employer knew of the employee's disability)

Defendant argues that Mr. Markgren's testimony regarding his disabilities, Defendant's failure to accommodate them and the resulting adverse ramifications which occurred at work are only meant to garner sympathy and invoke the emotions of the jury.  No, they are relevant facts related to his disabilities and to his claim that Defendant failed to accommodate his disabilities.

Again, Defendant relies on inapposite caselaw to support its arguments.  *Mayoza v Heinold Commodities, Inc.* 871 F.2d 672 (7th Cir 1989) was an investment fraud case where the plaintiff's heart condition had nothing to do with trading.  Here, Plaintiff's heart condition is directly at issue.

As for incidents prior to the 300 days before filing his administrative complaint, Defendant relies on *Hirlston v Costco Wholesale Corp No* 17-cv-04699,2020 WL 6047913 (S.D. Ind 2020) which concluded that actions prior the 300 days were discreet.  Here, Defendant's actions of failing to reasonably accommodate Plaintiff were a ***continuing violation*** including because Plaintiff asked for several different accommodations through-out his employment from several different people especially after his heart attack.  Plaintiff clearly testified that the heat restriction

given by Dr. Kluge was never lifted and Defendant never accommodated that restriction.  A continuing violation is a continuing system of discrimination which operates against the employee and violates his rights up to a point in time that falls within the applicable limitations period. Alternatively, a continuing violation is shown where there is a series of related acts against a single individual.  *Sosa v Hiraoka* (9th Cir 1990) 920 F.2d 1451, 1455 (continuing violation found over 3 year period).  The continuing violation doctrine permits a plaintiff to get relief for time-barred conduct "by linking it with an act that is within the limitations period." *Miller v Am. Family Mut. Ins. Co.* 203 F.3d 997 1003 (7th Cir 2000).  Three theories allow the plaintiff to do so: (1) the employer made the relevant employment decisions over time, making the precise date of discrimination difficult to determine; (2) the employer has an express policy of discrimination; and (3) discrete acts of discrimination constitute an ongoing pattern, and one of those occurred within the limitations period.  *Tinner v United Ins. Co. of America* 308 F3d 697, 707 (7th Cir 2002); *Sutton v Potter* 15 A.D. Cases 712, 27 NDLR P 276 (N.D.Ill 2004) (employer ignored repeated requests for accommodation); *Galloway v General Motors Service Parts Operations* 78 F.3d 1164 (7th Cr 1996)  A serial violation is found where the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period. *National R.R. Passenger Corp. v Morgan* 536 U.S. 101, 107, 118 (2002) (harassment was repeated over a period of years…incidents part of one unlawful employment practice and a charge was timely filed within 300 days of any one act).  Indeed, events more than 10 years old could be viewed as part of a single hostile work environment claim.  *McGinest v GTE Service Corp* (9th Cir 2004) 360 F.3d 1103, 1115, fn.6; *Madison v IBP Inc.* (8th Cir 2003) 330 F.3d 1051, 1051.

Here, since 2012, Mr. Markgren repeatedly asked for accommodations including that the fan be fixed or a larger one installed, the air conditioning unit on the roof be fixed, someone help him clean the machine; if he could wear lighter protective gear and transfer to the new plant.  All of these denials resulted in him suffering a heart attack at work and fainting including on July 1, 2019.

Plaintiff does not intend to offer evidence of workers compensation injuries as they do not constitute a disability unless they impacted his disabilities.

Plaintiff does intend to offer evidence regarding disabilities related to his back including his sciatica and his severe depression. These are relevant to his claim that Defendant did not reasonably accommodate his disabilities as well as his damages and mitigation of those damages. Indeed, Defendant's Motion in Limine No 4 argues that Plaintiff should not be allowed to present any evidence of lost wages. (See Plaintiff's arguments in opposition to Defendant's MIL No 4 below)

Based on the above, Defendant's Motion in Limine No 2 must be denied.

### PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE THAT SAPUTO SHOULD HAVE ASSIGNED A WORKER TO ASSIST HIM

Defendant's third motion in limine is again based on a faulty argument that Plaintiff simply requested Saputo assign him someone to assist him with his work. That was not his testimony. In his deposition, Mr. Markgren testified that after 2017 when Defendant began requiring the employees wear personal protective gear that was heavy, thick, nonbreathable and in which he "really cooked" that Defendant send somebody down for a couple hours during cleanup which would've helped tremendously but no-one came. (Dkt 45/46 132:1-19) Plaintiff did **not** ask that someone else perform the essential functions of his position. Instead, he testified that he did himself performed the essential functions of his job without reasonable accommodations including because he had no choice. (Dkt 45/46 132:20-24, 134:4-18, 138:7-16)

Defendant simply argues that assigning a helper is not a reasonable accommodation but in doing so, relies solely on cases that did not differentiate between essential and non-essential job functions but simply stated the duties to be assigned were essential. (Defendant cites to E.E.O.C. v Stoughton Trailers, LLC No. 08-cv-748, 2010 WL 2572813, at *6 and *Majors v Gen. Elec Co.,* 714 F.3d 527, 534 (7th Cir 2013)). Yet, cases arguing non-essential functions have found the opposite. See U.S. Equal Employment Opportunity Commission v AIC Security Investigations,

Ltd. 55 F.3d 1276, 1284 (7th Cir 1995) (even for employees who pose a direct threat, an employer must make reasonable accommodations…restructuring a job such as by removing non-essential functions from the job).

Nowhere did Defendant argue what portions of Mr. Markgren's job were essential vs non-essential. Nor did Mr. Markgren's job description identify that clean-up was an essential job function. Instead, Mr. Markgren's job description lists essential functions of (a) responsible for the quality and appearance of the product; (b) watch the machine to ensure it operates properly; (c) remove cheese from forms and place on racks; (d) cut midget loaves; (e) keep belts and towers from plugging; (f) handle and use cleaning chemicals and conduct concentration checks; (g) enter whey tank.(See Dkt No 57-5)

Moreover, 29 C.F.R. §1630.2 (o)(1)(ii) defines a reasonable accommodation to include modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed and under (o)(2)(ii) reasonable accommodations may include job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices…the provision of qualified readers or interpreters and other similar accommodations for individuals with disabilities. *Benson v Northwest Air* 62 F.3d 1108 (8th Cir 1995) (employee met burden that reasonable accommodations were possible relating to reallocating the marginal functions of his job…the relevant inquiry focuses on the position held when the employee was terminated…Defendant made no showing that it would have had to eliminate an essential job function to accommodate the Plaintiff)

As such, this testimony is directly relevant to Mr. Markgren's failure to reasonably accommodate his disability cause of action. It is not prejudicial because it would not confuse the jury or cause it to incorrectly conclude that Defendant would be liable. Instead, it is one element of Mr. Markgren's remaining claim against Defendant and must be allowed as evidence at trial in this matter and Defendant's Motion in Limine No 3 must be denied.

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S
## MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF LOST WAGES

Under the Americans With Disabilities Act 42 U.S.C. §§ 12101-12213, Plaintiff is entitled to equitable, compensatory damages and punitive damages if he can demonstrate that the employer did not reasonably accommodate his disability with malice or reckless indifference to his federally protected rights. 42 U.S.C. §1981a(a)(1), (b). Because the provisions of the Civil Rights Act of 1991 were automatically incorporated into the ADA (42 U.S.C. §12117(a); 42 U.S.C. § 1981a(a)(2),) these additional remedies are now available under the ADA. *EEOC v AIC Sec. Investigations, Inc.* 55 F3d 1276 (7th Cir. 1995); 42 U.S.C. §1981a(c).

Backpay is an equitable remedy awarded in the court's discretion in ADA cases where as here, Defendant's failure to reasonably accommodate Mr. Markgren's disability resulted in his termination.

As argued above, Mr. Markgren's panic and fear of having a heart attack affected his response to Selkow's and Skow's ridicule on December 28, 2019. The ADA makes it an "unlawful employment practice" for an employer to discharge a person "because of . . . [his] disability." 42 U.S.C. § 12112(a). An employer discharges an employee "because of" his disability when it fires the employee for conduct, which was caused by the disability. (*Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1139-1140 (employer only offered one accommodation and denied subsequent requests and the employee lost her job); *Den Hartog v. Wasatch Academy* (10th Cir. 1997) 129 F.3d 1076, 1086; *Borkowski v. Valley Cent. School Dist.* (2d Cir. 1995) 63 F.3d 131, 135; *Teahan v. Metro-North Commuter Railroad* Co. (2d Cir. 1991) 951 F.2d 511, 515-517; *Schmidt v. Safetyway, Inc.*, *supra*, 864 F.Supp. at 1001-1002)[2]

---

[2] Defendant cites to *Pernice v City of Chi.,* 237 F.3d 783 (7th Cir 2001) for the argument that an employee can be terminated for violations of valid work rules …even if the employee's violations occurred under the influence of a disability. Yet, *Pernice* is factually distinguishable because his termination resulted from his possession of cocaine and an altercation with Chicago police officers.

Once an employer becomes aware of the need for accommodation, it has a mandatory duty to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations, the court held.  Since the obligation to accommodate is a "continuing duty that is not exhausted by one effort" (*Humphrey,* 239F.3d. at p. 1138, quoting *McAlindin v. City of San Diego* (9th Cir. 1999) 192 F.3d 1226, 1237.)

Second, for purposes of the ADA, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination, the court held.  ***The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.***  Here, on December 28, 2019, Markgren panicked because he'd been harassed by Selkow and Skow for two years.  After their exchange and then their laughing at him, he was afraid that he was going to have a heart attack.  The combination made it urgent that he leave work that day.  Doug Strohschein described Markgren as being intent on getting out.  Thus, his heart disability affected how he acted on December 28, 2019.  See also In *Borkowski v. Valley Cent. School Dist., supra*, 63 F.3d 131 – teacher who couldn't control her students requested reconsideration of the tenure decision citing her disability.  The district rejected her request.  Summary judgment was denied because the district knew of her disabilities and therefore, had an "affirmative obligation" to make reasonable accommodation to these known disabilities.  "Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge . . . *because of* the disabilities."  As such, Mr. Markgren's disabilities, including as they related to his heart on December 28, 2019 are relevant to his cause of action that Defendant failed to reasonably accommodate his disabilities and must be admitted.  As such, Mr. Markgren's

---

The ADA specifically states that employers may hold alcoholics and drug users "to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism."  42 U.S.C. § 12114(c)(4).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S TEN MOTIONS IN LIMINE TO EXCLUDE RELEVANT EVIDENCE

requests for damages, including back pay, are related to Defendant's failure to reasonably accommodate his disability.

Defendant's case law is again inapposite. In *Voeltz v Arctic Cat, Inc.* 406 F3d 1047 (8th Cir 2005) it was the jury that found that Mr. Voeltz was entitled to actual damages on the failure-to-accommodate verdict. The jury did not find that he lost his job because of Arctic Cat's failure to accommodate his disability[3]. Thus, this is a question to be presented to the jury and not decided on a motion in limine to the Court.

As for Mr. Markgren's receipt of disability benefits, the Supreme Court has established that "pursuit and receipt of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim" nor is there a special legal presumption restricting a person who is receiving SSDI benefits from bringing an ADA claim. *Cleveland v Policy Mgmt. Sys. Corp* 526 U.S. 795, 797, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) The plaintiff must merely proffer a sufficient explanation for the apparent contradiction. *Id* at 806, 119 S.Ct. 1597. In *Voeltz v Arctic Cat, Inc.* 406 F.3d 1047 (2005), the jury heard the plaintiff's testimony and explanations as to why he applied for social security benefits in April 2001 and found the plaintiff's ADA claim was not inconsistent with his application for disability benefits[4]. *Id* at 1050-1051. Here, Mr. Markgren's

---

[3] Defendant also cited to *Ledford v Lamartz* 462 F.Supp.3d 905 (N.D. Ind. 2020); however, it is distinguishable because the plaintiff in that case merely argued that evidence relating to the dismissed claims needed to be introduced to preserve any appellate issues. How they were relevant to the remaining claim was not argued.

[4] Even *Flowers v Komatsu Min. Systems, Inc.* 165 F.3d 554 (1999) states that the law of the circuit was that the receipt of social security disability benefits did not preclude a person, as a matter of law, from being a qualified person with a disability. The Court then notes that US Supreme Court decision in *Cleveland v Policy Management Systems* noted above.

Defendant erroneously relies on *Pals v Schepel Buick & GMC Truck, Inc.* 220 F.3d 495 500 (7th Cir 2000) for the proposition that front pay is not triable by right of jury yet while *Pals* so states it also found consent under Rule 39(c) because one party demanded a jury trial, the other did not object and the court ordered trial by jury. *Id.* at 501. See *Arroyo v Volvo Group North America, LLC* 12-cv-6859 2017 WL 2985649 *3 (N.D.Ill 2017) Here, Mr. Markgren's complaint requested trial by jury (See Dkt No 35). Defendant's answer did not object to a trial by jury including in any of its affirmative defenses. (See Dkt No 39)

physicians, including Dr. Kluge his heart doctor and Dr. Lingen, his general practitioner, will both testify that Mr. Markgren can return to work[5]. Defendant never took the depositions of these witnesses even though Plaintiff identified them in her initial disclosure on January 10, 2022 and Defendant obtained their respective medical records.

Here, the ultimate decision is whether or not Mr. Markgren could have performed his duties at Defendant during the relevant period for which back pay is sought. Given he was performing those duties when his employment ended and his physicians will testify that he is able to work, the question rests with the jury not with the Court on a motion in limine and Defendant's Motion in Limine No 4 must be denied.

### PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE OF EMOTIONAL DISTRESS

Compensatory damages include emotional distress damages. 42 U.S.C. § 12112 et seq; 42 U.S.C. §1981a(a)(2); *E.E.O.C v AutoZone, Inc*. 707 F.3d 824, 833-834 (7th Cir 2013) (court upheld $100,000 in compensatory damages for the physical, emotional and/or mental pain the plaintiff had experienced as a result of AutoZone's failure to provide him with reasonable accommodation. See also *Harvey v Office of Banks & Real Estate* 377 F.3d 698, 713-715 (7th Cir 2004) (award of $100,000 in compensatory damages for an employee's mental and physical ailments); *Reed v State of Illinois* 12-cv-7274 2016 WL 2622312 *4 (compensatory damages, including for emotional distress, are available in private causes of action under the ADA)

To recover emotional distress damages a plaintiff must show a reasonable probability that damages due to emotional distress were in fact incurred as a result of an unlawful act. Such evidence, as to whether Mr. Markgren is entitled to emotional distress damages for his ADA

---

[5] Again, this fact distinguishes Mr. Markgren's claims from those in *Follis v Mem'l Med. Ctr.,* No. 08-3056, 2010 WL 431920, cited by Defendant, wherein the neurologist stated that he did not believe the Plaintiff was capable of working; *Eiben v A. Epstein & Sons Internation, Inc.* 57 F.Supp. 607 (N.D.Ill 1999) was not an employment case but infringement of copyright and based on Fed. Rules Evid 401 and 403; *Dallefeld v Clubs at River City, Inc.* 2017 WL 4621775 (C.D.Ill 2017) damages were reduced because nothing in the trial record indicated whether or not the plaintiff would have been able to fully perform his duties by September 4, 2014 when his 12 weeks of FMLA leave ended.

claim, must await his presentation of testimony and evidence. *Scopelliti v Traditional Home Health & Hospice* 3:18-c4-40 2021 WL 4355585 (MD Pa 2021)

Plaintiff's first amended complaint, paragraph No 81 specifically states that Mr. Markgren suffered emotional distress damages including anxiety, severe depression, much lowered self-esteem etc in his Fourth Cause of Action for failure to reasonably accommodate his disability or participate in the inter-active process. The paragraphs immediately prior set forth the reasons Plaintiff is entitled to compensatory damages. Plaintiff's prayer for relief also asks for general, compensatory and non-economic damages for the first through sixth causes of action and liquidated, exemplary and/or punitive damages for the first through sixth causes of action. (See Dkt #35)

Defendant's Interrogatory No 8 asks Plaintiff "[t]o the extent that you are claiming that you suffered emotional or any other form of distress *as a result of Saputo's alleged conduct*, (a) describe the nature…(b) state whether you have sought professional advice….and (c) identify all documents…Defendant responded with detail regarding his emotional distress. (See **Exhibits A and B** to Declaration of Beth Huber In Support of Plaintiff's Response and Opposition to Defendant's Motions In Limine ("Huber decl"))

Plaintiff's initial disclosure states that he was seeking lost wages, benefits and other earnings, compensatory and punitive damages and attorneys' fees….is entitled to emotional distress damages under Title VII (so also the ADA) then went on to describe his emotional distress damages. Given compensatory damages were available to Plaintiff under Title VII, the ADA and the ADEA, his emotional distress was described encompassing all three causes of action. (See **Exhibit C** to Huber decl.)

Plaintiff's amended initial disclosures repeatedly identified Mrs. Markgren as a witness to his emotional distress. (See **Exhibit D to G** to Huber decl.) ***Defendant never deposed Mrs. Markgren***.

Thus, under Rule 26(a), Mr. Markgren provided sufficient information regarding his compensatory damages including emotional distress. See *Roberts v Tim Dahle Imps., Inc.* 2:18-

cv-00288-JNP-DBP 2022 WL 1787709 (Utah 2022) *(*plaintiff's only disclosure was to state that she sought compensatory damages including for emotional distress arising from Defendant's discriminatory and harassing treatment during her employment then stating she'd seek not less than $300,000. The court stated that a precise calculation for emotional distress was not required and would be difficult, if not impossible, to provide a more accurate or meaningful calculation) Given the above, Mr. Markgren has from day one of this litigation asserted he suffered emotional distress related to Defendant's failure to reasonably accommodate his disabilities.

Furthermore, during his deposition in this matter Plaintiff was asked:

Can you tell me about how *your termination has affected you emotionally* to which Plaintiff testified his depression was just going off the wall. (Dkt 45/46 at 160:22-163:1)

Plaintiff was then asked about management not respecting long-term employees to which he responded. (Dkt 45/46 at 163:2-165:3)

He was next asked how things changed after corporate came in which he answered. (Dkt 45/46 at 165:4-166:25)

Defense counsel then again asked *Mr. Markgren about the depression he's had since he was fired* to which he responded. (Dkt 45/46 at 169:11-170:19)

Counsel then again asked about his…*depression from your termination* led to additional weight gain and that's affected your heart condition/back to he responded that his depression was more manageable while he was employed then discussed his blood pressure. (Dkt 45/46 at 170:16-172:19)

He was then asked if there was *any additional emotional distress related to his termination* to which he responded deep depression. (Dkt 45/46 at 172:20-173:5)

Counsel then asked about Plaintiff's depression before he was terminated to which Plaintiff testified about losing his parents and marital issues. (Dkt 45/46 at 173:17-174:19)

In short, during his deposition, *Plaintiff was never asked what emotional distress he suffered as a result of Defendant's failure to reasonably accommodate his disabilities.* Given all

of the above, Defendant's case cited, *Bartlett v NIBCO Inc.* 2011 WL 1042324 (ND Ind 2011) is inapplicable to this matter.

As for Plaintiff lacking medical expertise necessary to diagnose the cause of his depression, Plaintiff himself is his own best witness as to the emotional distress which he suffered in response to Defendant's failure to reasonably accommodate his disability. Indeed, such testimony is indeed relevant to Plaintiff's damages in this matter and must be allowed under Fed R Evid 401. Medical or other expert evidence is not required to prove emotional distress and the plaintiff's own testimony alone can be sufficient to establish emotional distress. *Marable v Walker* 704 F.2d 1219, 1220-21 (11th Cir 1983); *Kim v Nash Finch Co.,* 123 F.3d 1046, 1065 (8th Cir 1997); *Sears v PHP of Alabama, Inc.* 2:05cv304-ID(WO) 2006 WL 1223302 (M.D. Al 2006)

Whether or not sufficient evidence exists to support an award of emotional distress damages is a determination which must be made after consideration of all of the evidence presented at trial. See also *Standen v Gertrude Hawk Chocolates, Inc.* 3:11cv1988 2014 WL 1095129 (evidence of the plaintiff's attempted suicide was relevant to plaintiff's harassment claim and emotional distress damages finding its probative value was high including because it was detrimental to the defendant's case and was not substantially outweighed by unfair prejudice)[6] Indeed, Mr. Markgren's testimony as to his own emotional distress is relevant under Fed. R. Evid 701.

Defendant's fifth Motion in Limine must be denied.

### PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE OF EEOC CHARGES OR OTHER ALLEGATIONS OF DISCRIMINATION ASSERTED, FILED OR SETTLED AGAINST SAPUTO THAT DO NOT INVOLVE PLAINTIFF

Defendant argues that Plaintiff intends to introduce evidence of other employee allegations that Saputo discriminated against them with the EEOC. He is not. Nor is he intending on

---

[6] Defendant's citation to *Cesario v Jewel Food Stores, Inc.,* No 17 CV 319, 2020 WL 996498, at *11 n. 42 (N.D.Ill. 2020) ignores the ruling that the plaintiff's testimony about his own state of mind was admissible.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S TEN        MOTIONS IN LIMINE TO EXCLUDE RELEVANT EVIDENCE

introducing evidence regarding Daryl Strohschein's settled claims of discrimination in his matter (though Mr. Strohschein will be testifying regarding Mr. Markgren's disabilities and the temperature of the old vs the new plant and staffing of the new plant in 2017). Plaintiff's Motion in Limine No. 2 also seeks to exclude the WERD investigation file into Mr. Markgren's allegations including the No Probable Cause Determination which Defendant has included in Exhibit Nos 514-516 (See Dkt No 138)

Plaintiff however does reserve the right to introduce evidence of Tammy Toll's claims of failure to reasonably accommodate her disabilities by the same decision-makers as in the Markgren matter in rebuttal should Defendant argue at trial that it regularly accommodated employees' disabilities. *United States v Anifowoshe* 307 F.3df 643, 649 (7th Cir 2002) (when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing party subsequently introduces evidence on the same subject) Defendant cannot have it both ways. It cannot be allowed to argue that it has a pattern and/or practice of accommodating employees' disabilities while asking the Court to prevent Plaintiff from admitting evidence that the same decision-makers did not reasonably accommodate other employees' disabilities.[7]

Such evidence is relevant when the cases are similar such as they include the same actors, reasons and other similar circumstances were involved. Whether such evidence is relevance is fact based, including how closely related the evidence is to plaintiff's circumstances and theory of the case. See *Sprint/United Mgmt. Co. v Mendelsohn* 552 U.S. 379, 381, 128 S.Ct. 1140, 170 L.

---

[7] Defendant's own case-law does not support its argument given the proposed evidence in *Manuel v City of Chicago* 335 F.3d 592 (2003) was simply that the supervisor was racist because of the way he treated personnel. In *Tulloss v Near North Montessori School, Inc.* 776 F.2d 150, 154-155 (7th Cir 1985) the court determined not to admit the EEOC file as a whole but instead, determine on a case-by-case basis, what, if any investigatory materials should be admitted at trial. In *Licciardi v Kropp Forge Division Employees' Retirement Plan* 797 F.Supp. 1375 (N.D.Ill 1992) the former president wished to include the lump sum paid to him in settlement of his claims towards his pension payments but was excludable under the release for all claims, whether known or unknown.

Ed. 2d 1(2008) other employee evidence is neither per se admissible nor per se inadmissible. Courts must determine if evidence from other employees is relevant under Rule 401 and if so, whether it should be excluded under Rule 403. Factors for relevance include "whether the other discriminatory behavior described is close in time to the events at issue, whether the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner and whether they were otherwise similarly situated. *Id at* 388.

Here, evidence relating to Tammy Toll's claims of failure to reasonably accommodate her disability has been known by Defendant since January 6, 2022 when the WERD sent her claims to Defendant. The same decision-makers were involved – Julia Schurman-Fossum, Jennifer Ellefson and David Miller and the failure to reasonably accommodate her disability occurred in 2020-2021. As such, this evidence is relevant especially in rebuttal should Defendant open the door regarding its alleged accommodation of other employees' disabilities. As such, any ruling on this motion in limine is more appropriate for trial than in response to Defendant's motion.

### PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF PLAINTIFF'S GOOD CHARACTER

Defendant's Motion in Limine No 7 is based on early documents in this matter including a meet and confer letter from May 2023 (Dkt 115-2) and two declarations – one for Dean Polzin (Dkt 94) and Ryan Donald (Dkt 99) Two of the witnesses in these documents, Steve Conoboy and Ryan Donald, are not included in Plaintiff Peter Markgren's Witness List for Trial (Dkt Nos 134/135) The remainder of witnesses identified will testify regarding the extreme temperatures in the old plant vs the air conditioned temperatures in the new plant, Mr. Markgren's disabilities, their knowledge of his disabilities, his requests for reasonable accommodations, whether or not they were granted to Mr. Markgren and if not, why not. They will also testify regarding the effects Defendant's failure to reasonably accommodate Mr. Markgren had on him including resulting emotional distress. The witnesses identified include Plaintiff, his wife, his supervisors, his managers, human resources representatives and his co-workers. All of their testimony is

relevant to Plaintiff's claim of Defendant's failure to reasonably accommodate his disabilities especially those related to his heart including but not limited to when the plant temperature reached over 100 degrees Fahrenheit and the resulting damages he is claiming in this matter.

At the same time, while evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith, it is admissible if Defendant attempts to attack Mr. Markgren's character. Fed.R.Evid 608 (allowing use of certain character evidence or opinion of character to impeach a witness' credibility); Fed.R.Evid 405; *Cooper et al v Daily et al* 07C2144 2012 WL 1748150 (ND Ill 2012).

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE FROM PLAINTIFF'S UNDISCLOSED WITNESS

Defendant argues that the court should not allow Plaintiff's private investigator, Virginia Thain, to testify in this matter though she was identified on May 19, 2023, before discovery closed, *as a rebuttal witness.* Her name and contact information was included in the disclosure. If Defendant had wanted to talk with her, they could have but they chose not to. Furthermore, Ms. Thain was not retained until late January to early February 2023 when Plaintiff was preparing his opposition to Defendant's summary judgment motion filed on February 17, 2023. Her testimony was not relevant to this matter until after Defendant identified Shann Munson as a witness in its behalf on May 16, 2023 in its Amended Initial Disclosure produced at 7:07 p.m. As such, she did not need to be disclosed prior to May 16, 2023. (See **Exhibit H-I** to Huber decl)

Defendant's Amended Initial Disclosure produced on May 16, 2023 stated Ms. Munson would testify regarding the December 28, 2019 record of discussion and first-hand observation, subsequent investigation; Defendant's employee policies; Plaintiff's job duties and expectations; Plaintiff's performance; complaints made by Plaintiff during his employment and any subsequent remedial measures or investigation; infrastructure at the Almena Facility. (See **Exhibit H-I** to Huber decl) Defendant had not included Ms. Munson as someone who may have such information in its initial disclosure on January 21, 2022 (See **Exhibit J** to Huber decl.) Plaintiff's investigator,

Ms. Thain, spoke to Ms. Munson and therefore, will provide rebuttal evidence to her already anticipated biased testimony given her daughter is employed in Human Resources at Saputo.

Of even greater import, Defendant's witness list for trial identified "Defendant's Record Custodian" as a potential witness if the need arises" Defendant did not identify this individual by name nor did Defendant identify him/her as a rebuttal witness. Defendant also then stated that it reserves the right to call any rebuttal witness. (See Dkt No 139) Nowhere at any time during discovery in this matter did Defendant ever identify, bring-up or otherwise disclose that its unnamed Record Custodian would be a witness in this matter. Fed. R. Civ. Pr 26(a)(1)(A)(i) requires parties to identify all people that a party may use to support its claim. Furthermore, Plaintiff has been highly prejudiced by Defendant's failure to identify this individual because he's not had the opportunity to depose him/her much less seek any follow-up discovery to any testimony he/she may have proffered. Plaintiff assumes this individual will be called to testify regarding document bates No 2024 which Defendant produced on May 19, 2023, the day discovery closed, at 9:47:56 p.m. (See Plaintiff's Motion in Limine No 1 seeking to exclude this evidence, Dkt No 119-7)

Defendant had years to find this document and to identify this witness. Plaintiff's complaint at all times included the allegation that Defendant did not accommodate his disabilities including the original complaint filed and his first amended complaint ( See Dkt Nos 1, 35). Plaintiff's deposition was taken on September 16, 2022 wherein he testified to the times he requested accommodations, the accommodations he requested and Defendant's failure to provide the accommodations. (See Dkt Nos. 45/46) Defendant filed a motion for summary judgment on January 27, 2023 and requested all of Plaintiff's causes of action be dismissed, including Plaintiff's claim for failure to reasonably accommodate his disability. (See Dkt No 54) Plaintiff opposed the motion on . ( See Dkt Nos 82/83) The Court ruled on Defendant's motion on May 19, 2023, granting all but Defendant's motion to get rid of Plaintiff's claim that Defendant failed to reasonably accommodate his disability. (See Dkt No. 116.) Of note, Defendant never responded to Plaintiff's discovery requests seeking evidence to show that any of Plaintiff's requests for

accommodation would have resulted in an undue hardship for Defendant …. until May 19, 2023 at 9:47 p.m.

Of greater importance, Rule 26(a)(3) Fed. R. Civ. P. does not require disclosure of the identity of witnesses who will be used solely for rebuttal or impeachment purposes. *Lawson v Plantation Gen. Hosp. L.P.* 08-61826-CIV-Rosenbaum 2010 WL 11504835 (SD Fl 2010) Rebuttal evidence is utilized to respond to matters first introduced by the opposing party and is offered to explain, repel, counteract or disprove the evidence of the adverse party. *United States v Lezcano* 296 Fed.Appx 800, 803 (11th Cir 2008) (quoting *United States v Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004); *Williams v Consolidated City of Jacksonville,* 2006 WL 305916 at *3 (M.D. Fla Feb 2006)

Here, Ms. Thain is a private investigator who was not employed by Saputo and was not a supervisor or manager who reviewed Plaintiff's requests for reasonable accommodation. Nor does she have knowledge regarding Plaintiff's damages including his emotional distress. As such, she will not testify in Plaintiff's case in chief. She is purely a rebuttal witness given she herself spoke with Ms. Munson. Plaintiff's trial witness list describes Ms. Thain's testimony as a rebuttal witness "regarding testimony of witnesses with whom she has spoken in this matter including Shann Munson" (See Dkt No 141) Defendant suddenly identified Ms. Munson as a witness and did not identify any rebuttal witnesses in its witness list but merely reserved the right to call any witnesses in rebuttal. (See Dkt No 139)

Defendant argues the investigator, Ms. Thain's testimony would be hearsay or double hearsay. First, evidence that is harmful to a party is not unfairly prejudicial merely because it is harmful. *U.S. v Symonevich* 688 F.3d 12, 23 (1st Cir 2012) Federal Rule of Evidence 802 prohibits the admission of hearsay, which is an "out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement" but, an out-of-court statement is not hearsay if it is relevant regardless of its truth. *Ira Green, Inc. v Military Sales & Serv Co.,* 775 F.3d 12, 19 (1st Cir 2014). A prior statement by an opposing party is not hearsay when it is offered against an opposing party and… was made by the party in an individual or representative capacity, is a

statement that the party manifested that it adopted or believed to be true or was made by a person whom the party authorized to make the statement or was made by the party's agent or employee. Fed. R. Evid 801(d)(2)(A)-(D); *Jones v Jasper Wyman & Sons* 1:20-cv-00383-JAW 2022 WL 16819057 (D Maine 2022)(statements made by a party in a separate complaint was not hearsay).

Here, Ms. Thain herself spoke with Ms. Munson. As such, her testimony is based on her own personal observation and conversation. (*U.S. v Blandina* 895 F.2d 293, 300 (7th Cir 1989) It is not based on what other employees told her about Ms. Munson. Indeed, Ms. Munson's statements to Ms. Thain are not hearsay under Rule 801(d)(1)(B)(i) because what she told Ms. Thain is likely to be quite different from what she will testify about in court in this matter. Rule 803(3) also takes the discussion between the two out of hearsay as an exception. As such, Defendant's cited caselaw cited is inapposite to this witness and Ms. Thain's rebuttal testimony must be allowed if Defendant is allowed to offer Ms. Munson as a witness in this matter. Defendant will also have the opportunity to cross-examine Ms. Thain during his testimony in this matter.

Defendant then surmises that the investigator was instructed by counsel to contact represented parties. She wasn't. Indeed, Defendant only represented David Miller, Julia Schurman-Fossum, Jennifer Ellefson and Lisa Housner. Plaintiff initially noticed the deposition of Shann Munson but Defendant did not produce her stating they did not represent her. Indeed, at the time she was no longer employed by Saputo. (See **Exhibit K** to Huber decl) The investigator did not talk to much less reach out to any individuals Defendant informed Plaintiff it represented. Therefore, there was no improper *ex parte* communication and her rebuttal testimony should not be excluded on that basis.

Based on all of the above, Defendant's Motion in Limine No 8 must be denied.

/ / /

/ / /

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S
## MOTION IN LIMINE NO. 9 TO EXCLUDE EVIDENCE OF THE PARTIES' PRETRIAL
## CONDUCT

Defendant's Motion in Limine No 9 is overbroad. While Plaintiff agrees not to refer to motions in this matter including Plaintiff's motions to compel, it is important and relevant at trial that Plaintiff be able to cross-examine Defendant's witnesses regarding the facts that (a) Defendant has not produced evidence that to have accommodated Plaintiff would have resulted in an undue hardship; (b) Defendant did not produce any documents to support what it did, if anything, in response to Mr. Markgren's requests for accommodation including in regards to evaluating his requests and granting or denying them; and (c) Defendant did not produce any documents in response to Mr. Markgren's deposition testimony wherein he identified several requests for accommodation including regarding fixing the fan, air conditioning, asking to transfer to the new air-conditioned plant in 2017 etc. The lack of any such evidence is directly relevant to refute Defendant's anticipated arguments at trial that it accommodated Plaintiff's disabilities and/or to do so would have resulted in an undue hardship. (See Dkt No 137 Defendant's Proposed Verdict Form) Because Defendant did not produce any such evidence prior to trial, it cannot be allowed now to present such evidence at trial and Plaintiff must be allowed to cross-examine Defendant's witnesses regarding the utter lack of such evidence. Indeed, that there is no such evidence is directly relevant to prove Plaintiff's claim that Defendant failed to reasonably accommodate his disabilities and to refute Defendant's claim that to do so would have resulted in an undue hardship. Fed. R. Evid 401-402. As such, Defendant's Motion in Limine No 9 must be greatly narrowed.

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S
## MOTION IN LIMINE NO. 10 TO EXCLUDE EVIDENCE OF FAILURE TO CALL
## WITNESSES OR TO PRESENT WITNESSES VIA LIVE TESTIMONY

Defendant's motion in limine is overbroad especially as to the decision-makers in this matter given Defendant repeatedly informed Plaintiff that it represented them and produced them

for their depositions.  These include David Miller, Julia Schurman-Fossum, Jennifer Ellefson and Lisa Housner.  The rule, as set forth in Defendant's own case *United States v Ogoke* 860 F.3d 924 (7th Cir 2017) is that counsel may not argue an adverse inference from an opposing party's failure to call a witness absent a showing that the witness was available only to that party citing to *Oxman v WLS-TV* 12F3d 652, 661 (7th Cir 1993).

To whatever extent the Court grants this motion in limine, Plaintiff requests it equally apply to Defendant given all of the witnesses in this matter were employees of Defendant except for Plaintiff's medical providers and therefore, Defendant had equal access to them as witnesses including after Plaintiff's extensive initial disclosure and amended initial disclosures in this matter on January 10, 2022 and August 1, 2022 respectively.  (See **Exhibits C-G** to Huber decl)

Dated:  June 14, 2023

       /s/

Beth A. Huber
Counsel for Plaintiff Peter Markgren
Huber Law LLC
State Bar Number 1120263
N1131 County Road L
Watertown, WI  53098
(415) 497 9173 (Phone)
(920) 542-6090 (Facsimile)
bhuber@huberlawfirm.net